**GUTHRIE v. JONES.**
Civil Action No. 3336.

District Court, W. D. Oklahoma.

May 17, 1947.

Mosteller & McElroy, of Oklahoma City, Okl. for plaintiff.

Lester L. Gibson, Sp. Asst. to U. S. Atty., of Washington, D. C., and Robert E. Shelton, U. S. Atty., of Oklahoma City, Okl., for defendant.

BROADDUS, District Judge.

*Jurisdiction*

1. In this action Will S. Guthrie seeks a refund of income and victory taxes paid to H. C. Jones, Collector of Internal Revenue for the United States within Oklahoma, for the calendar years 1942 and 1943. Based on the taxpayer's returns for those two years, the Commissioner assessed additional tax liability for the year 1943 in the amount of $5,369.05 which the taxpayer paid on April 24, 1945. A claim for refund of $5,217.26 was filed with the Commissioner May 5, 1945, an adjustment of $775 in a stock loss reported in 1942 not being contested. By letter of May 6, 1946, the Commissioner disallowed the claim for refund. This suit to recover a refund was filed November 15, 1946, in the manner and time provided by law. This court has jurisdiction. 28 U.S.C.A. § 41(5); 26 U.S.C.A. Int.Rev. Code, § 3772.

*The Taxpayer's Business and Whether the Sale of Lots Was Made in the Ordinary Course of the Taxpayer's Business.*

2. For forty-six years the taxpayer has been a resident of Oklahoma City and engaged in the loan and investment business. He has never, unless the facts under which the deficiency tax was imposed are an exception, been a salesman, broker, manager or developer of real estate. Nor has he by advertisement or other means held himself out to the public as a handler of real estate in any of the capacities named. At one time he was a member of the Oklahoma

City Real Estate Board but not because of any association with handling of real estate.

3. The taxpayer, in his loan and investment business, loaned in 1925 to the owners of a platted and subdivided addition to Oklahoma City $17,500 of a client's fund secured by a first mortgage on the addition and $9,500 of his own funds secured by a second mortgage on the same tract. Upon default the mortgages were foreclosed and were bought by the taxpayer on February 27, 1932.

4. Until 1940 the taxpayer made only an occasional sale of a lot within the addition. Sales increased during the period of 1940 to 1943. There were one-hundred transactions from 1940 to 1942, seventy of which were installment purchases made in 1940 and 1941, twenty-four sales for 1942 and six in which the sale was never completed. There were one-hundred thirteen transactions for 1943, fifty-three of which were installment sales of those heretofore noted. There were eighty-four sales of lots for the tax years involved.

5. The taxpayer used no initiative in these transactions and did not solicit or promote any of the sales. His personal sales were to buyers who sought him out. The remaining sales were made by an independent real estate salesman who had an office at the subdivision and who had posted a "for sale" sign. This salesman acted independently of the taxpayer and without the taxpayer's supervision or instruction. The sole remuneration received by the agent was the agreed commission upon the sales made.

6. No improvement or change in the lots of the subdivision was made by the taxpayer after acquisition; they were sold in the condition in which he acquired them. They were sold at a substantial increase above the cost but consistent with the increased value of Oklahoma City real estate. The growth of the city and economic conditions generally caused and authorized the increased market value.

7. The lots were not held primarily for sale to customers in the ordinary course of the taxpayer's business.

8. The Commissioner imposed deficiency tax upon a finding that the earnings of the taxpayer from the sale of the lots were in the ordinary course of his business and, therefore, not a capital gain.

## Conclusions of Law.

A. The issue is whether the profits received from the sale of the taxpayer's lots were, under the facts found, a sale of capital assets, only one-half of which profits may be subjected to income tax, or whether the profits from such sales arose from the sale of property held primarily for sale to customers in the ordinary course of the taxpayer's trade or business in which event the whole of the gain is subject to income tax as ordinary income. 26 U.S.C.A. Int. Rev.Code, § 117. The issue is one of fact. Reynolds v. Commissioner, 1 Cir., 155 F.2d 620; Van Suetendael v. Commissioner, 2 Cir., 152 F.2d 654; Estate of Kleberg v. Commissioner, 7 T.C. 1488; and see Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783; Fuld v. Commissioner, 2 Cir., 139 F.2d 465.

The existence of certain circumstances such as the regularity and continuity of sales (Higgins v. Commissioner, supra; Brown v. Commissioner, 5 Cir., 143 F.2d 468), the nature of the acquisition of the property or purpose of acquisition (Kanawha Valley Bank v. Commissioner, 4 T.C. 252; Thompson Lumber Co. v. Commissioner, 43 B.T.A. 726; Jones v. Commissioner, 1 T.C. 1214; Three States Lumber Co. v. Commissioner, 7 Cir., 158 F.2d 61, reversing 5 T.C. 1391), the nature and extent of taxpayer's "business" (Flint v. Stone Tracy Co., 220 U.S. 107, 171, 318 Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312), the activity of the taxpayer in promoting the sales (Haden v. Commissioner, 2 T.C. 1268; Oliver v. Commissioner, 1 T.C. 1215, affirmed 4 Cir., 138 F.2d 910; Swanston v. Commissioner, 1 T.C. 1216), and other circumstances are the factors to be considered in arriving at a decision. No one of these facts is decisive but the solution must depend upon all the pertinent facts and their relative importance in each case.

Here the taxpayer's business was loans and investments and not the real estate business; the property was acquired incident to the default of a loan; the sale

of the lots acquired was made to regain the amount of the loan; the taxpayer was inactive and passive in the sales; the sales were irregular and lacking in continuity for over eight years; the bulk;of the sales was due to the growth of the community and the change of economic conditions; and the lots were not held primarily for sale. It follows that the profits from the sales were long term capital gains as distinguished from ordinary income. Fahs, Collector, v. Crawford et al., 5 Cir., 161 F.2d 315; Three States Lumber Co. v. Commissioner, supra; Kanawha Valley Bank v. Commissioner, supra; Estate of Kleberg v. Commissioner, supra; Farley v. Commissioner, 7 T.C. 198.

Judgment will be entered as of the date of the filing of these findings of fact and conclusions of law, this 17th day of May, 1947.