SPANISH TRAIL LAND COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14063. Promulgated March 16, 1948.

*John D. Kelley, Esq.*, for the petitioner.
*D. Louis Bergeron, Esq.*, for the respondent.

#### OPINION.

BLACK, *Judge*: The Commissioner has determined a deficiency in petitioner's income tax for the year 1944 of $368.80 and a deficiency in petitioner's declared value excess-profits tax for the same year of $1,994.41. The deficiencies are due to adjustments made to net income as reported by petitioner's return, which were explained in the deficiency notice as follows:

(a & b) It is held that the real estate disposed of during the year 1944 was held for sale in the ordinary course of the corporation's business. The net profit shown on your return of $24,047.71 has been increased to $25,313.12 due to decreasing selling expenses by $1,265.41 and has been subjected to tax as ordinary income instead of capital gain as reported by you.

Petitioner does not contest the item of $1,265.41 above mentioned, but it does contest the Commissioner's determination that its gain from the sale of the property was not capital gain. By an appropriate assignment of error it contests the Commissioner's determination in that respect.

We adopt the facts which have been stipulated as our findings of fact. Such of them as it is believed are necessary to an understanding of the issue to be decided are summarized below.

Spanish Trail Land Co., hereinafter referred to as petitioner, is a corporation which was organized on January 2, 1931, under the laws of the State of Texas, with its place of business located in Houston, within the first collection district of Texas. Its return for the taxable year was filed in that district.

The real estate involved in this case was originally owned by Braeswood Corporation, a corporation previously organized under the laws of the State of Texas to engage in the real estate development business. In order to provide funds for its operations, Braeswood Corporation created a mortgage secured by its real estate, and mortgage bonds totaling $250,000 were sold to several companies and individuals. After Braeswood Corporation had defaulted on its bonds, sometime late in 1930, J. R. Neal, J. W. Neal, Underwood Nazro, and B. F. Bonner, the remaining original bondholders, came into possession of all of the properties of Braeswood Corporation, including the real estate, in foreclosure proceedings. On or about January 2, 1931, it exchanged these properties, including the real estate, for the capital stock of petitioner, which amounted to $284,299. The real estate so acquired consisted of the following acreage:

| Description | Acreage |
|---|---|
| (1) Lakewood section, located south of Brays Bayou in the South End Section of Houston, Texas | 45 |
| (2) Acreage including blocks 3, 4, and 5, except lots 11 and 12 of block 3, Braeswood Subdivision in the South End Section of Houston, Texas | 22.51 |
| (3) Tract adjoining blocks 3, 4, and 5, above, lying between Bellaire and Maroneal Boulevards, in the South End Section of Houston, Texas | 5 |
| (4) Tract in what is known as the Business Center, located at the corner of Main Street and Bellaire Boulevard, in the South End Section of Houston, Texas | 4.16 |
| (5) Tract located in Business Center part of tract at the corner of Main Street and Bellaire Boulevard | 7.84 |
| Total | 84.51 |

Block 3 of Braeswood Subdivision had originally been developed and improved while owned by Braeswood Corporation, while blocks 4 and 5, although developed by Braeswood Corporation, were subdivided subsequent to acquisition by petitioner. Between the date of incorporation and December 31, 1940, a number of lots were sold for cash or

cash and notes from blocks 3, 4, and 5. All sales were made through independent real estate brokers.

On March 14, 1942, petitioner filed its corporation income tax return for the calendar year 1941. During that year the following sales and collections were made:

(a) *Improved lots:* 22 sales totaling $23,018.38, and involving 35 lots or parts of lots for which it received cash or cash and notes.

(b) *Land:* A 45-acre tract, Lakewood Section, sold for $69,750.00. It received $5,000.00 cash, a $58,000.00 note, and a piece of real estate, Ormond Place, valued at $6,750.00.

(c) *Building:* Cost of land shown as $789.03, while the building, shown as $7,456.01, disclosed depreciation sustained in prior years of $167.78.

(d) *Collections on prior years sales:* During 1941 petitioner collected $2,454.69 on sales made prior to December 31, 1940.

The profit from the above was reported by petitioner as ordinary income:

|  | *Profit* |
|---|---|
| (a) Improved lots | $13,988.33 |
| (b) Land | 1,796.42 |
| (c) Building | (77.86) |
| (d) Collections on prior years sales | 1,240.07 |
| Total amount reported as ordinary income | 16,946.96 |

On or about March 15, 1943, petitioner filed its corporation income tax return for the calendar year 1942, disclosing the profit on sale of real estate as ordinary income and reporting it in a manner similar to that for 1941, shown above. The return showed a loss of $612.13. On March 15, 1944, petitioner filed its corporation income tax return for the calendar year 1943, disclosing sales of lot 21 and 20 feet of lot 20 of block 5 for a consideration of $4,134.51, represented by cash of $3,134.51 and a note for $1,000, on which it reported a profit of $1,911.50 as ordinary income. It also claimed as a deduction commissions paid during the year. On March 15, 1945, petitioner filed its corporation income tax return for the calendar year 1944, the year herein involved, in which it reported the sale of its remaining real estate, consisting of the following:

(a) Business Center, Braeswood, consisting of:

| | |
|---|---|
| 4.16-acre tract at Main Street and Bellaire Boulevard | $12,569.62 |
| 7.84-acre tract also at Main Street and Bellaire Boulevard | 88,679.63 |
| 3-acre tract adjoining at Bellaire and Maroneal Boulevards | 25,104.00 |
| Total cost | 126,353.25 |

The consideration was:

| | |
|---|---|
| Cash | $ 25,000.00 |
| Note | 150,000.00 |
| Total | 175,000.00 |

(b) Remaining lots in blocks 3, 4, and 5, consisting of approximately
    17 lots or parts of lots_____ $26, 245. 43
    Ormond Place property_____ 6, 750. 00
    5-acre tract_____ 15, 422. 87

    Total cost_____ 48, 418. 30
The consideration was:
    Cash_____ $3, 500. 00
    Note _____ 31, 500. 00

    Total_____ 35, 000. 00

Petitioner determined its ordinary income to be $37.50, the interest on notes, and a net loss resulting from operations. In a schedule attached to the return, capital gains and losses, petitioner determined the following capital gain:

(a) Business Center:
    Sale price_____ $175, 000. 00
    Less:
        Cost_____ $126, 353. 25
        Sale expense_____ 10, 480. 74   136, 833. 99

    Profit_____ $38, 166. 01
(b) Remaining lots and acreage:
    Sale price_____ $35, 000. 00
    Less:
        Cost_____ $48, 418. 30
        Sale expense_____ 700. 00       49, 118. 30

    Loss_____ 14, 118. 30

        Net profit, reported as capital gain_____ 24, 047. 71

In its 1941 and 1943 returns, petitioner reported that its business was "Real Estate Development." In its 1944 and 1945 returns, petitioner reported its business was "Real Estate Investments and Development."

In making its contention that the $24,047.71 here in question should be treated as capital gain and not as ordinary income, petitioner strongly relies upon the case of *Thompson Lumber Co.*, 43 B. T. A. 726. We think that case is distinguishable on its facts. In the *Thompson Lumber Co.* case, the taxpayer's principal business was buying and selling lumber. Occasionally it acquired a parcel of real estate to prevent or minimize a loss upon an account for lumber or materials which it had sold. We emphasized that fact when we said in our opinion: "Its real estate (other than lumber yards) appears to have been acquired solely for the purpose of minimizing or preventing loss upon lumber and building materials sold by it." The taxpayer maintained no real estate department and merely sold these parcels of real estate

which it had acquired under the above circumstances whenever it could find a purchaser at a satisfactory price. We held that under those circumstances the real estate in question did not constitute "property held primarily for sale to customers in the ordinary course of its trade or business" and that taxpayer's loss was a capital loss within the meaning of section 117, Revenue Act of 1936.

In the instant case, if petitioner had any business at all, and clearly it did have, its business was dealing in real estate. Although petitioners' charter is not in the record, petitioner on brief states that the incorporators selected section 47 of article 1302, Revised Civil Statutes of Texas, as the provision of the statute under which they would incorporate. This article reads:

To erect or repair any building or improvement, and to accumulate and lend money for said purposes, and to purchase, sell and subdivide real property in towns, cities, and villages and their suburbs not extending more than two miles beyond their limits and to accumulate and lend money for that purpose. Acts 1897, p. 189; G. L. vol. 10, p. 1241.

It is clear from the facts which have been stipulated that petitioner was incorporated for the purpose of developing, selling, and disposing of rather extensive holdings of real estate which its incorporators had acquired in a foreclosure proceeding. It seems to us that no other inference can be drawn from the facts which have been stipulated than that petitioner held the real estate conveyed to it by its incorporators in exchange for all of its capital stock "primarily for sale to customers in the ordinary course of its trade or business."

Petitioner in its income tax returns for the taxable year and prior years has reported its gains and losses from the sale of lots as ordinary income or ordinary losses, as the case may be. We think this was proper. However, it strongly argues that the 15 acres of land consisting of 3 tracts which it sold in 1944 to one purchaser should be treated differently from the sale of its subdivided lots. We are unconvinced by petitioner's argument in this respect. We have no evidence in the record that these 3 small tracts aggregating 15 acres were held differently from any of the rest of the land which petitioner acquired from its incorporators. We have no facts except the stipulated facts, and from these we certainly could not make a finding that petitioner was holding the 3 tracts aggregating 15 acres any differently from the way it was holding the rest of its real estate.

Petitioner in its brief seems to argue that we should decide this case as if we had petitioner's incorporators before us as the taxpayers instead of petitioner itself, and it cites *Pope* v. *Commissioner*, 77 Fed. (2d) 599. One has only to read the facts in the *Pope* case to see that it is altogether dissimilar from the instant case. We do not have before us here individuals, as the court had before it in the *Pope* case. We have here the corporation itself which acquired the properties

for development and sale. The fact that liquidation of the properties was one of the motives or even the dominant motive does not affect the situation in so far as a decision of the issue involved is concerned. See *Ehrman* v. *Commissioner*, 120 Fed. (2d) 607.

We think the other cases cited and relied upon by petitioner are as clearly distinguishable as the two to which we have referred above, but it would unnecessarily prolong this opinion to take them up and discuss them separately. Suffice it to say we have carefully read and considered them under the facts which we have here, and we do not think they are applicable.

While the facts in *Brown* v. *Commissioner*, 143 Fed. (2d) 468, are not the same as those involved in the instant case, we think the language in that case is appropriate to what was done here. The court said in the *Brown* case:

\* \* \* While the petitioner did not personally conduct the business of selling lots she did conduct it through another. She sold to all comers, subdividing and developing to attract purchasers. Anyone who wished to buy could do so. Her sales were not isolated transactions; neither were they casual rather than continuing. They were substantial and frequent. \* \* \*

The court then went on to hold that the taxpayer's profits from such sales were ordinary gain, rather than capital gain, and should be taxed accordingly.

We think we must so hold in the instant case. The Commissioner's determination is sustained.

*Decision will be entered for the respondent.*