MARTIN DRESSEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32348.    Promulgated March 6, 1952.

*Alric Anderson, Esq.*, for the petitioner.
*Thomas A. Steele, Jr., Esq.*, for the respondent.

OPINION.

HARRON, *Judge:* The question is whether the profit which the petitioner realized from the sale of the Prior Lake lots and one lot in Shakopee is taxable as capital or ordinary gain.

The respondent has determined that the properties involved must be excluded from the class of capital assets, under section 117 (a) (1) of the Internal Revenue Code, because they were "held by the petitioner primarily for sale to customers in the ordinary course of his trade or business." He relies upon *Richards* v. *Commissioner*, 81 F. 2d 369; *Welch* v. *Solomon*, 99 F. 2d 41; *Ehrman* v. *Commissioner*, 120 F. 2d 607; *Brown* v. *Commissioner*, 143 F. 2d 468; *McFaddin* v. *Commissioner*, 148 F. 2d 570; *White* v. *Commissioner*, 172 F. 2d 629; and *C. E. Mauldin*, 16 T. C. 698 (on appeal C. A. 10).

The petitioner contends that the properties were not so held and that he was not engaged in a business of selling real estate. The petitioner relies upon *Foran v. Commissioner*, 165 F. 2d 705; *Thompson Lumber Co.*, 43 B. T. A. 726; *Frieda E. J. Farley*, 7 T. C. 198; and *Harriss v. Commissioner*, 143 F. 2d 279, affirming 44 B. T. A. 999.

There are several tests which are applied to determine whether a taxpayer is engaged in a real estate business in which he holds property primarily for sale to customers within the meaning of section 117 (a) (1) of the Code. In general, the courts have analyzed the records of proceedings before them for evidence which shows the extent of the taxpayer's activities in selling his property; and the frequency, continuity, and substantiality of sales is usually a factor which indicates that the taxpayer held property primarily for sale to customers and engaged in a business of selling the property. *Boomhower v. United States*, 74 F. Supp. 997. However, the question is a question of fact in each case, to be determined in the light of all of the evidence; and no test can be regarded as determinative of the question. *W. T. Thrift, Sr.*, 15 T. C. 366, 369.

In this proceeding the facts differ distinctly from the facts in the cases of *Richards, Solomon, Ehrman, Brown, White, McFaddin*, and *Mauldin* on which the respondent relies. It is clear that the petitioner put his savings into the purchase of the lots in 1931 as an investment and as a way of securing his savings at a time when banks were having difficulties. See *Foran v. Commissioner, supra*. The petitioner had no intention of going into the real estate business, cf. *Spanish Trail Land Co.*, 10 T. C. 430; and he had no intention of developing the property. The property had been subdivided in 1911, so that we do not have here the situation of a taxpayer who acquires acreage and later subdivides it into lots, and engages in developmental activities and extensive selling activities as was true in the *Ehrman, Brown, White, McFaddin*, and *Mauldin* cases. Cf., also, *Oliver v. Commissioner*, 138 F. 2d 910. And when, in 1946, the petitioner first considered selling his lots, he was not motivated by a desire to go into a real estate business. He was not anxious to sell his property, and he gave consideration to disposing of it only because he was borrowing money to pay debts and needed funds.

Of course, "Where liquidation of an asset is accompanied by extensive development and sales activities, the mere fact of liquidation will not be considered as precluding the existence of a trade or business," *Frieda E. J. Farley, supra*, page 204. The narrow question here is whether petitioner's activities in 1947 in connection with the sales which were made in liquidating his asset were sufficient to constitute the carrying on of a real estate business and to convert the lots which he bought and held as an investment into property held primarily for sale to customers in the course of his business.

The record convinces us that the petitioner's activities in 1946 and 1947 were not sufficiently frequent, substantial, or engrossing to constitute the operation of a real estate venture or business. See *Phipps v. Commissioner*, 54 F. 2d 469. In the first place, the petitioner demonstrated by his testimony that he was thoroughly ignorant in matters pertaining to real estate transactions. His friend of forty years, Weiland, who worked in a bank which made real estate loans, interested the petitioner in the lots in the beginning. Although he had no intention of handling sales for the petitioner when, in 1946, the petitioner needed money, and brought a real estate dealer from Minneapolis to the petitioner, he was the only person who could give the petitioner the assistance he needed. Shakopee was a small town of about 1,800 people in 1946. The petitioner impressed the Court as a man of limited education and experience, whose business activities were restricted to the comparatively simple business of selling drinks—soft and hard, who worked long hours in the operation of a tavern, and who did not have the faintest idea of what would be involved in a "land-office" business. His earnings were not large, and his means were modest. He had been a passive investor in the lots, and he was passive in 1946 and 1947 when some of his lots were sold. Compared to many cases where the familiar tests have been applied and discussed, the petitioner's investment was small, and the sales in 1946 and 1947 were not the substantial sales which are found where it has been concluded that selling activities constituted the operation of a real estate business. This is quite apparent in making comparison with the facts in the *White* case, for example, on which respondent relies, where the taxpayers sold 267 lots in the two years preceding the taxable year, and in one year sold 250 lots for over $200,000.

In this proceeding the respondent, by cross examination of the petitioner and Weiland, endeavored to elicit testimony to the effect that the two of them undertook a real estate operation to "cash in" on a large demand for lots, a little boom, but the responses to respondent's counsel's questions did not substantiate such hypothesis or theory at all. There is a suggestion in the record that Weiland later went into the real estate business, but the petitioner has testified that he never discussed such undertaking with Weiland and that he did not know whether Weiland did or did not later go into a real estate business. What Weiland may have done later, the record does not show clearly, and, in any event, is immaterial. The petitioner moved away from Shakopee in 1948, and he did not reinvest the proceeds of sales in other real estate, but, rather, paid his debts. The evidence does not support the respondent's theory, and he misjudged the situation when he made the determination that the petitioner was a dealer in real estate in 1947.

We have observed, before, that it is often difficult to draw the line between what amounts only to liquidating an asset and primarily holding property for sale to customers in the conduct of a business. *Thomas E. Wood*, 16 T. C. 213, 227. We do not have such difficulty here. There were no extensive development and sales activities and the sales of 14 lots in 1947 were not, in our opinion, substantial sales. It is concluded that the number of sales and the sales activities in connection therewith were insufficient to constitute the carrying on of a business and to convert the lots which had been held for investment into property held primarily for sale to customers in the course of a business.

This proceeding resembles in several respects the cases of *Farley* and *Wood*. One factor common to those cases and to this one is that commissions were retained by those who brought in purchasers, out of the purchase price. Whether that factor is important and critical depends upon all of the facts in a particular case. It was not regarded as critical in the *Farley* and *Wood* cases, but it was treated as having importance in the *Erhman* and *Brown* cases, for the reason, however, that all the evidence showed that selling activities were so substantial as to constitute the carrying on of a business.

In this proceeding, we are satisfied that the petitioner really was passive in the matter of sales efforts and that as in the *Farley* case, offers came to him. The agency concept is not overlooked, either, but we are convinced, also, that Weiland acted independently of the petitioner. See *Guthrie* v. *Jones*, 72 F. Supp. 784. And the fact that there was an element of continuity of sales is off-set by the length of time during which lots were sold. At the end of 6 years, all of the lots had not been sold, and in some years only 8 lots were sold. The average in 6 years was about 9 lots per year. If the petitioner had been able to sell all his lots at once, as he tried to do, for what he considered a fair price, the element of continuity of sales would have been eliminated here. But we understand that test to mean that sales must be substantial as well as frequent and involve extensive sales activities. At any rate, we regard the sales of lots here as gradual and under the principles of *Burnet* v. *Harmel*, 287 U. S. 103, believe that this petitioner is entitled to the application of the capital gains provision of the statute.

It is held that the gains realized by the petitioner in 1947 from the sales of lots are capital gains and are not taxable as ordinary income.

*Decision will be entered for the petitioner.*