Estate of W. D. Haden, Deceased, Edwin E. Lund, Independent Executor v. Commissioner.
Estate of W. Haden v. Commissioner
Docket No. 37910.
United States Tax Court
1953 Tax Ct. Memo LEXIS 174; 12 T.C.M. (CCH) 825; T.C.M. (RIA) 53250; July 14, 1953
*174 Bleecker L. Morse, Esq., for the petitioner. Joseph P. Crowe, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent has determined the following deficiencies in income tax: Year
Deficiency
1947
$26.216.33
1948
1,944.52
The first issue is whether for 1947 the estate of the deceased husband must report all of the income from Texas community property during the period of administration, or whether one-half is reported by the estate and one-half by the surviving spouse. The second issue is whether the gain from the sale of real estate in 1947 and 1948, and the profit from installment payments received during those years but relating to sales made in prior years, are taxable as ordinary income or as capital gain. Other adjustments in the deficiency notice are not before us. Findings of Fact W. D. Haden, a resident of Galveston, Texas, died testate on December 31, 1944. Fiduciary income tax returns for 1947 and 1948 were filed for the estate of W. D. Haden with the collector of internal revenue for the first district of Texas. Edwin E. Lund, an independent executor-trustee, was the fiduciary named *175 on the returns. Almost all of the property decedent owned at the time of his death was community property. Decedent's wife could accept under his will and agree to the terms of the will, or she could take one-half of the community estate but nothing under the will. She elected not to accept under the terms of the will but rather to take onehalf of the community estate. Her "Refusal To Accept Under Will"was properly filed in the probate court on January 18, 1945. She did not request partition of the property. The executor-trustee collected all of the income from the estate community property and all the receipts from the sale of the estate community property. The executortrustee paid the surviving spouse her share of the income. For the year 1947, on the advice of counsel, only one-half of the income of the estate was included as income on the fiduciary return. In the year 1948, after the promulgation of Estate of Catherine Cox Blackburn, 11 T.C. 623, the fiduciary reported all of the income of the estate on the return; the actual distribution to the surviving spouse was also shown. There was no income from the separate property of decedent for 1947 and 1948. The *176 estate at the time of the testator's death was valued at approximately $1.8 million dollars, and it was estimated that 90 per cent of this estate was in the form of stocks and bonds and 10 per cent in real property. The estate was still being administered as of December 31, 1948. Lund, together with the other executortrustees, brought a suit to determine whether a trust existed under the will in view of the refusal of the surviving spouse to accept under the will. The Court of Civil Appeals of Texas held that the intent of the testator as disclosed by the will was to create a trust on his separate property and on his one-half of the community property, which was to continue until death of the surviving spouse. This was to apply even if the surviving spouse declined to accept under the will. McDow v. Lund, 250 S.W. (2d) 247. This judgment affirmed a district court's decision. Decedent was a partner with D. T. Austin in Haden and Austin, a partnership founded in 1917. This partnership was originally engaged in the road construction business. The partnership was founded upon a written agreement which was in full force and effect on December 31, 1944. The agreement was *177 in part as follows: "All of the assets of the firm, real and personal belonging to the firm are owned by us on equal shares and each is in the future as in the past, to share equally all profits and losses that may arise. "In case of the death of either of us, the survivor agrees: (a) To finish all outstanding contracts and divide equally the profits therefrom with the deceased member's heirs, executors or administrators. (b) To purchase without delay the deceased member's one half interest in the operating equipment. * * * "It is agreed that all Real Estate owned by surviving partner, and heirs, Executors, and administrators of the deceased member, is to be divided or held until such time as the sale price is satisfactory to both parties to sell same." The profits from the construction business were invested in real estate. In W. D. Haden, a Memorandum Opinion of this Court, entered November 30, 1943 [2 TCM 1029], we held that the partnership for the years 1939 and 1940 engaged in a real estate business and that the partnership held real estate primarily for sale to customers in the ordinary course of its trade or business. For the years from 1941 through *178 1944, the gain from the sale of partnership real estate was treated as ordinary income. A summary of the Haden and Austin partnership balance sheet as of December 31, 1944, is as follows: ASSETS
Cash
$102,065.29
Notes receivable (first mortgage
real estate)
90,205.60
Real estate for sale
509,846.63
Road building equipment
2,725.00
Other
29,632.66
Total Assets
$734,475.18
LIABILITIES AND NET WORTH
Liabilities
$ 32,859.14
Net Worth
Haden capital account
350,808.02
Austin capital account
350,808.02
Total
$734,475.18
Some of the real estate owned by the former partnership was sold after the death of Haden. In 1945 there were six cash sales for an aggregate of $20,011.97, and fourteen installment sales for an aggregate of $376,516.56. In 1946 there was one cash sale for $7,500. In 1947 there were two cash sales for a total of $133,580.50, and three installment sales for a total of $40,100. In 1948 there was one installment sale for $7,500. None of the real estate owned by the former partnership, Haden and Austin, has been subdivided since December 31, 1944. However, Haden's surviving spouse and Austin did pay for a portion of the construction *179 of a street adjacent to their property. In this instance the county proposed to construct a street 75 feet wide but Austin prevailed upon the authorities to widen the street providing he would pay for the additional work. The additional cost was approximately $8,000. None of the property belonging to the former partnership was advertised for sale, and no "for sale" signs were erected on any of the property. The property was not listed with any realtors in Houston or the surrounding territory. No customers were sought by petitioner, nor the surviving spouse. No real estate salesmen were employed to sell this particular property. Neither petitioner nor Austin had a real estate license. Neither petitioner nor Austin belonged to real estate associations. No real estate purchases were made by petitioner, Austin, nor the surviving spouse as joint owners since December 31, 1944. Petitioner and Austin maintained an office where collections were made. Austin went to the office nearly every day for his mail. Even though no salesmen were employed by petitioner or Austin, it was generally known in the community that petitioner and Austin had real property for sale. If anyone sold property for *180 them, petitioner and Austin gave the salesman a five per cent commission on the sale. Austin handled the sale of the realty. The executor merely joined in the proposed sale after Austin completed the negotiations. The gain realized upon installment sales during 1947 and 1948, upon installment sales made prior to December 31, 1944, was reported on the fiduciary returns as ordinary income. Like gain upon sales made within six months of December 31, 1944, was reported as short-term capital gain; the gain on these sales after six months was reported as long-term capital gain. Respondent's statement in the deficiency notice contains the following: "It is held that certain income which this estate reported as long-term capital gains during the taxable years, and which was attributable to real estate sales made by the surviving partner of the partnership, Haden & Austin, in reality constitutes ordinary income as reflected herein since such income was derived from a business carried on by the said surviving partner. "The decedent, W. D. Haden, and his spouse owned considerable community property. In the estate's return for the taxable year 1947 only one-half the income from such property *181 was reported, the other one-half being reported by the surviving widow. It is held that since the estate was in the process of administration during the said taxable year, the entire corrected community income constitutes income to the estate and deduction is allowed for amounts properly paid or credited to the beneficiaries. * * *" The real property sold by petitioner was not sold in the ordinary course of a trade or business. Opinion For the first issue petitioner contends for the year 1947 that only one-half of the income to the estate should be taxed to the estate and that decedent's widow should not be treated as a beneficiary under the will. On the other hand, respondent, under the authority of Barbour v. Commissioner, 89 Fed. (2d) 474, contends that the estate was in the process of administration during 1947, and all the income from the community property is taxable to the estate. The same issue was presented in Estate of J. T. Sneed, Jr., 17 T.C. 1344. In that case we considered not only Barbour v. Commissioner, supra, but also Henderson's Estate v. Commissioner, 155 Fed. (2d) 310. It was our conclusion then, and it *182 is our conclusion now, that the Henderson's Estate case was controlling. Therefore, under the authority of that case and the Sneed case we hold that the estate of the deceased husband is taxable on only one-half of the community income for the year 1947. Section 161 (a) (3), I.R.C. See Estate of Catherine Cox Blackburn, 11 T.C. 623; affd. in part, 180 Fed. (2d) 952. The petitioner must be sustained on this issue. cf. Estate of J. F. Hargis, 19 T.C. 842. For the second issue petitioner contends that the gain from the sale of real estate which was formerly owned by the partnership was capital gain. In support of his determination respondent maintains that the gain was ordinary income since the petitioner held the real estate primarily for sale to customers in the ordinary course of its business. Section 117 (a) (1) (A). Was the estate and Lund, its executor, in the real estate business? In its simplest form, that is the issue before us. The courts have decided many cases of this nature and by their decisions have established tests and criteria which now aid us in determining whether petitioner held real property for sale *183 in the ordinary course of its business. Among the tests and criteria which must be considered are the continuity and frequency of sales, the substantiality of sales, the reasons for the acquisition and the disposition of the property, the activity of the seller or his agents in effecting sales, and the activity and effort spent in the development of the property. Thomas E. Wood, 16 T.C. 213, 226; Martin Dressen, 17 T.C. 1443, 1447. However, the question is one of fact and each case must be decided on its own facts, and no single test can be regarded as determinative of the issue. W. T. Thrift, Sr., 15 T.C. 366, 369. In 1947 there were five sales totaling $173,680.50 and in 1948 there was only one sale totaling $7,500. Because of the threeparty ownership of the land, only one-fourth of the sales was received by petitioner; Austin and the surviving widow received the balance. The fact that there were five sales in one year and only one in the next indicates an absence of sales activity. The lack of continuity and the infrequency of the sales tend to support the petitioner's contention that it was not in the real estate business. It is significant *184 to note the absence of any sales activity which would indicate the existence of a trade or business. Petitioner did not buy or purchase any property for resale. All of its property was that which belonged to the former partnership and was acquired as the result of Haden's death. This fact indicates that petitioner did not buy property for resale as it might if it were in the business of selling real property. Petitioner did not subdivide or plat any of its property. However, respondent points out that the money spent on the widening of a street was an improvement by petitioner which would indicate that it was in the business of selling real property. The street was widened in conjunction with a street construction program of the county. Petitioner, the surviving widow and Austin spent $8,000 to widen the street so that it would conform to the street pattern already established. The street did enhance the value of petitioner's adjacent property, but the payment for this work would not be sufficient to place petitioner in the business of selling real property. Petitioner did not employ salesmen nor did it advertise the land for sale. The fact that it was generally known in the community *185 that petitioner had land for sale does not put petitioner in the business of selling real property. The sales to unsolicited buyers and petitioner's passivity in effecting these sales only point to the absence of a business. The primary purpose in selling the real estate was the liquidation of the estate's interest in the former partnership assets. While the partnership assets could have been liquidated in a single transaction, we know of no requirement which proscribes the piecemeal liquidation as undertaken by petitionr. Cf. Ehrman v. Commissioner, 120 Fed. (2d) 607, and White v. Commissioner, 172 Fed. (2d) 629
In his argument respondent asserts that the partnership of Haden and Austin continued in business after Haden's death. Under Texas law the death of one partner dissolves the partnership. Altgelt v. Alamo National Bank, 98 Tex. 252, 83 S.W. 6; Johnson v. Smith, 35 S.W. (2d) 798. See also, 40 Am. Jur. 326. Nor is the theory that a new partnership could have been formed to continue the business of Haden and Austin worthy of mention. We have no evidence of the formation or of the intent to form a new partnership to carry *186 on the old business. We do not construe the last clause in the will as a mandate for the petitioner to carry on the partnership business. That clause only provides that the real estate should be sold at a price satisfactory to the interested parties. When we review all of the facts, particularly the paucity of sales in 1947 and 1948, and the inactivity of the petitioner in effecting these sales, we would not be justified in holding that the petitioner held real estate primarily for sale to customers in the course of its trade or business. Frieda E. J. Farley, 7 T.C. 198; Thomas E. Wood, supra; Martin Dressen, supra. The gain realized from the real estate sales in 1947 and 1948 is taxable as long-term capital gain. Another item in the second issue remains to be considered, and this concerns the gain received in 1947 and 1948 from installment sales. The gain from installment sales prior to December 31, 1944, was reported as ordinary income. The gain from sales within six months of December 31, 1944, was reported as short-term capital gain. The gain from sales of property sold after six months was reported as long-term capital gain. There *187 is no dispute as to the gain from the installment sales prior to December 31, 1944. That property was sold in the ordinary course of a trade or business and the gain resulting therefrom is ordinary income. Petitioner's actions in 1945 and 1946 were no different than its actions in 1947 and 1948. We have concluded above that the properties sold in 1947 and 1948 were capital assets, and we now hold that the properties sold in 1945 and 1946 were also capital assets. All of petitioner's real estate spruing from the same source; all sales were for the purpose of liquidation, and all sales were made in the same passive manner. Therefore, the gain received in 1947 and 1948 from installment sales in 1945 and 1946 was capital gain. See Harry B. Golden, 47 B.T.A. 94. The petitioner must be sustained on this issue. Decision will be entered under Rule 50.