Hugh F. Little and Mildred L. Little v. Commissioner. Ernest E. Gentry v. Commissioner.
Little v. Commissioner
Docket Nos. 34267, 34281.
United States Tax Court
1954 Tax Ct. Memo LEXIS 307; 13 T.C.M. (CCH) 115; T.C.M. (RIA) 54046; February 9, 1954
*307 Held, petitioners' partnership was not engaged in two distinct types of real estate dealings: holding some properties for investment and others for resale. Three properties sold by the partnership in 1947 were held by it primarily for sale to customers in the ordinary course of business. Benjamin O. Johnson, Esq., Box 1656, Spartanburg, S. C., for the petitioners. John P. Persons, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined a deficiency in income tax of $3,954.75 against Hugh F. Little and Mildred L. Little for the calendar year 1947, and deficiencies in income tax of $50.94 and $2,918.25 against Ernest E. Gentry for the calendar years 1946 and 1947, respectively. In his petition Ernest E. Gentry did not allege error in the respondent's *308 determination of a deficiency for 1946. Thereafter respondent's motion to dismiss the proceeding by Gentry as to the calendar year 1946 was granted, and the determination of a deficiency of $50.94 for 1946 was sustained. On the motion of petitioners the two cases were consolidated for hearing and opinion. The issue presented for our determination is whether three of the properties sold by the partnership of Hugh F. Little and Gentry in 1947 were held primarily for sale in the ordinary course of the partnership's business. The income tax returns of all petitioners for the years in question were filed with the collector of internal revenue for the district of South Carolina. Findings of Fact Petitioners Hugh F. Little and Mildred L. Little are husband and wife residing in Spartanburg, South Carolina. For the calendar year 1947 they filed a joint income tax return. Hugh F. Little, a retired cotton mill executive, is licensed to deal in real estate and maintains an office for that purpose in Spartanburg, South Carolina. Ernest E. Gentry is a licensed real estate dealer with an office in Spartanburg, and has been engaged in this business in Spartanburg since 1914. In 1945 Hugh *309 F. Little and Gentry, hereafter referred to as petitioners, entered into a partnership for the purpose of dealing in real estate. Gentry was to contribute his skill and experience as a real estate man in buying properties and in obtaining prospective purchasers for them. The necessary capital was to be furnished by Little. A part of their agreement was contained in a letter of November 29, 1945, from Little to Gentry. This letter stated in part: "Relative to the several pieces of property purchased and now holding in the City of Spartanburg, I desire to confirm: "You are to receive one-half of such profits on the property listed, after the sale of same, when and after I have received the total purchase money advanced and paid by me, and after deduction from the sales price of all taxes, State, County and City, including Federal Income and all profit taxes now levied by the Federal Government, or that might in the future be levied by the Government on profits realized from the sale of real estate, also, any and all taxes accruing or paid on this property up to the sale of any or all of the property. "Deduction from any profits in this transaction will, also, include all insurance; *310 fire, wind storm, elevator, plate glass, public liability; repairs of any nature, maintenance, and such other cost as may be required for the proper care of the property listed in order to sustain proper rental values. "I am to receive interest at the rate of five per cent (5%) per annum on the purchase price, and on any and all monies advanced and paid out by me, which is chargeable to this transaction." * * *
The terms stated were to apply to four properties identified as 147 1/2-151 North Church St.; parcel on Wofford St.; 147 S. Church St.; and lot at West Main and Ezell Sts. Two of these properties are here involved. Through his real estate office Gentry solicited prospective buyers for the partnership's properties. Between 1945 and 1948 the partnership acquired thirteen properties, seven of which were in turn sold in this period. Some of the properties bought by the partnership had buildings on them, while others were vacant. Building properties were generally improved and rented for a period of time after purchase. Both types of properties were sold by the partnership. On the books of the partnership no segregation was made between property held for investment and *311 that held for resale. The partnership was ended in 1949 because Gentry was desirous of selling certain partnership properties, which Little refused to sell. The transactions which the partnership entered into were as follows Date
Date
Sale
Cost or
Location
Bought
Sold
Price
Basis
Gain
147 1/2-51 N. Church St.
3-19-45
1- 1-47
$42,500.00
$27,378.17
$15,121.83
W. Main and Ezell
7-10-45
1- 2-46
3,000.00
1,978.75
1,021.25
147 S. Church St.
7-16-45
1- 1-47
30,000.00
18,278.12
11,721.88
Wofford St. tenements
7-17-45
Right of way sold
6,500.00
150-52 N. Church St.
6-11-46
Not sold
13,500.00
E. Main St. residence
10-31-46
1- 2-47
26,000.00
20,444.60
5,555.40
Magnolia St.
12-19-46
Not sold
22,500.00
E. Main St. stores
2-15-47
Not sold
20,000.00
Pine St. lots
2-15-47
1948
58,000.00
31,679.80
26,320.20
E. Main St. lots
2-15-47
Not sold
24,480.00
N. Church St. lots
5-15-47
12-26-47
3,250.00
2,340.00
910.00
Kennedy St. lots
6-14-47
1948
6,500.00
4,045.15
2,454.85
Kennedy St. lots
6-14-47
Not sold
21,300.00
In 1946 the partnership net income from rents was $1,051.39, and *312 in the same year it had a long-term capital gain from the sale of real estate of $1,021.25. The following year it incurred a loss of $1,268.80 in renting properties, but reported a long-term capital gain of $27,753.71 from the sale of three properties. It is this reported longterm capital gain which is in issue here. In 1947 the partnership had also a short-term capital gain of $5,555.40. In 1948 the net gain of $28,775.05 from the sale of two partnership properties was reported as ordinary income; while rental income of $6,306 for this year was also reported. After deductions the total ordinary net income reported by the partnership for 1948 was $26,297.86. The following sales made by the partnership in 1947 are in issue in this proceeding: Bought
Sold
Sale Price
Cost
Gain
147 1/2-51 N. Church St.
3-19-45
1- 1-47
$42,500.00
$27,378.17
$15,121.83
147 S. Church St.
7-16-45
1- 1-47
30,000.00
18,278.12
11,721.88
N. Church St. lots
5-15-47
12-26-47
3,250.00
2,340.00
910.00
In its return for the calendar year 1947 the partnership reported the gain from these sales as long-term capital gain, and both partners treated the gain similarly *313 in their returns for the same year. In notices of deficiency dated February 14, 1951, the respondent determined that the three properties sold in 1947 had been held for sale in the ordinary course of the partnership's business, and that consequently the gains realized from the sale constituted ordinary income to the partners. Ultimate Findings of Fact The properties involved in this proceeding were held primarily for sale to customers in the ordinary course of the partnership's business. Opinion The argument of the petitioners is that their partnership had two distinct types of real estate dealings: it acquired and held some properties for investment, while others were held primarily for resale. The three properties involved in this suit, petitioners contend, were bought and held until sale as investments; consequently, they argue, the gain realized from the sales should be treated as the gain from the sale of a capital asset held for more than six months. In order to prevail here the petitioners must show that, contrary to respondent's determination, the three properties sold in 1947 were not held by the partnership primarily for sale to customers in the ordinary course *314 of business. Section 117, Internal Revenue Code. This showing depends, in turn, on the extent of the partnership's activities in bringing about the property sales in question. The numerous decisions treating with this problem have laid down certain considerations or tests by which the conduct of the partnership is to be measured in determining whether its activities amount to the holding of property primarily for sale in the ordinary course of business. [1] Important among these considerations are the reason for the partnership's acquiring the property in question; the extent of the sales activity of the partnership, such as improving the property and soliciting its sale by advertising or other means; the continuity of sales or salesrelated activity over a period of time; and the number, frequency, and substantiality of sales. *315 Although our specific concern is with the properties sold in 1947, we must look at all of the partnership's property dealings as shown by the evidence to determine whether the petitioners have demonstrated that the business of the partnership can be separated into two distinct types of transactions. The original understanding of the partners was contained in a letter of November 29, 1945, from Little to Gentry, which provided that Gentry was to receive one half of the net profit from the sales of four properties then owned by Little. The four properties were listed in the letter by location and included two of the properties involved in this suit. The letter contains an incidental reference to rentals, but nowhere does it mention that the partnership was to acquire and hold property for investment. The way the partnership carried on its business was that Gentry, an experienced real estate dealer, would suggest to Little the purchase of certain properties. If acceptable to Little, the purchase would be made with his money and title taken in his name. Through his real estate office Gentry held himself open to offers to purchase partnership property. All offers were submitted to Little, *316 who accepted some and rejected others. Some properties were improved and rented. Profits from sales and rentals were divided equally between the partners after certain deductions had been made. After considering the testimony of the petitioners and other evidence as to the manner in which the partnership carried on its business, we are unable to detect any pattern of doing business which convinces us that the partnership had two distinct types of real estate dealings. The written agreement of the parties refers only to the sale of property; nowhere does it mention that property is to be acquired for investment. Gentry's testimony as to his understanding of the partnership's business in effect was that property with a building on it would be rented and held for investment, while other property would be acquired for resale. However, the transactions of the partnership between 1945 and 1948, as set forth in our findings of fact, reveal no such plan of doing business. In this period thirteen properties were acquired by the partnership; eight of these properties had buildings on them, while five were vacant properties. Seven sales, in addition to the sale of a right-of-way, were made *317 by the partnership between 1945 and 1948. Four of these sales were of properties with buildings on them, and three were sales of vacant properties. It is apparent that any of the partnership properties was for sale if an acceptable price was offered. In his testimony petitioner Little stressed the fact that he himself did not advertise or solicit the sale of partnership property. However, the understanding of the partners was that Gentry was to handle sales. Our concern is with the conduct of the partnership, and one partner's inactivity is of no consequence where the other partner, acting according to the partnership agreement, actively solicits sales. Welch v. Solomon, 99 Fed. (2d) 41 (1938). When not in his office discussing possible sales, Gentry, according to his own testimony, was "out trying to find somebody to buy something." The partnership did not formally advertise the properties it had for sale, but not much advertising would seem to be required under the circumstances here; sales were placed in the hands of Gentry, an experienced real estate dealer who had maintained the same real estate office in Spartanburg for over thirty years. He testified that the *318 usual practice of his business was for prospective buyers to visit his office and ask what he had for sale. Petitioner Little emphasized also the fact that he refused some of the offers to buy which were submitted to him by Gentry; this, he felt, indicated that the partnership had two kinds of property dealings. We are unable to agree. The rejection of some offers of purchase is not necessarily inconsistent with the carrying on of a real estate business by the partnership. C. E. Mauldin, ( 1951) 16 T.C. 698, 712, affd. 195 Fed. (2d) 714 (1952). A further indication that the partnership had no preformed plan of carrying on two distinct types of real estate dealings is the fact that all of its property holdings were lumped together on the partnership's books, no segregation being made of property held for investment and that held for resale. When we consider the written understanding of the partners, the number of properties it bought and sold between 1945 and 1948, and the methods used by the partnership in acquiring and, particularly, in selling some of its holdings, we can reach no other conclusion than that the three properties sold by the partnership *319 in 1947 were held primarily for sale in the ordinary course of the partnership's business. Accordingly, the gain from these sales should have been reported by the partnership as ordinary income and not as gain from the sale of capital assets. Each partner's distributive share of the gain should have been similarly reported. Section 182 (c), Internal Revenue Code. Decision will be entered for the respondent. Footnotes
1. E.g., Friend v. Commissioner, ( C.A. 10, 1952) 198 Fed. (2d) 285; Dunlap v. Oldham Lumber Co., ( C.A. 5, 1950) 178 Fed. (2d) 781; Snell v. Commissioner, ( C.A. 5, 1938) 97 Fed. (2d) 891; Boomhower v. United States ( D.C.N.D., Iowa, 1947) 74 Fed. Supp. 997; Martin Dressen, 17 T.C. 1443 (1952); and W. T. Thrift, Sr., 15 T.C. 366↩ (1950).