Estate of Wilson Critzer, Deceased, Lulu Nason Critzer, Special Administrator v. Commissioner. Lulu Critzer v. Commissioner. Estate of Wilson Critzer, Deceased, Lulu Nason Critzer, Special Administrator, Lulu Nason Critzer, Individually v. Commissioner.
Estate of Critzer v. Commissioner
Docket Nos. 45040-45042.
United States Tax Court
T.C. Memo 1954-211; 1954 Tax Ct. Memo LEXIS 40; 13 T.C.M. (CCH) 1087; T.C.M. (RIA) 54316; November 30, 1954, Filed Clarence A. Bradford, Esq., for the petitioners. Peter K. Nevitt, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income taxes in the amounts and for the years as follows: Deficiency
Docket No.
Petitioner
1946
1947
1948
45040
Estate of Wilson Critzer, deceased Lulu Nason
Critzer, Special Administrator
$3,153.77
45041
Lulu Critzer
3,943.33
45042
Estate of Wilson Critzer, deceased, Lulu Nason
Critzer, Special Administrator, Lulu Nason
Critzer, Individually
$18,594.81
$1,089.20
*41 The issues presented are: (1) Whether for the taxable years involved the gains realized by petitioners from the sales of certain vacant lots constituted ordinary income; (2) whether the respondent erred in determining that for each of the taxable years the land contracts received from purchasers by petitioners were the equivalent of cash to the extent of their face value; and (3) whether, in the event that the sales in question involved properties held primarily for sale to customers in the ordinary course of business, petitioners incurred expenses in connection with such sales which they failed to deduct in reporting their income for each of the taxable years involved. Respondent concedes that in 1946 petitioners incurred business expenses of $339.45 which petitioners failed to deduct on their return. Findings of Fact The stipulated facts are found accordingly. During the taxable years 1946, 1947, and 1948, Wilson Critzer and Lulu Nason Critzer were husband and wife, residing in Detroit, Michigan. Their joint income tax returns for 1946 and 1948, and their individual returns for 1947, were filed with the collector of internal revenue for the district of Michigan, at Detroit. *42 All filed on the cash receipts and disbursement method of computing income. Wilson Critzer died March 6, 1953, and Lulu Nason Critzer was appointed special administrator of his estate. During the early 1920's petitioners acquired vacant farm lands on the outskirts of Detroit, Michigan, which they converted into subdivisions named Hyde Park, Maplehurst, Laurelhurst, Westhampton, Southampton, and Northampton. Petitioners had water mains installed in all of the subdivisions and sewers installed in Hyde Park, Maplehurst, Northampton, and Westhampton. Nearly all of the lots comprising these subdivisions were sold by petitioners prior to 1929 to individual purchasers under executory contracts for the purchase of land, commonly referred to as land contracts in the State of Michigan. Under such contracts legal title is retained by the vendor in trust for the purchaser until full payment is made. In the depression years following 1929 many of petitioners' purchasers were unable to continue payments and subsequently defaulted on their land contracts. Petitioners were likewise unable to pay the property taxes on their lots and title to such properties passed to the State of Michigan for *43 nonpayment of taxes. As soon as they were financially able to do so, petitioners recovered their subdivisions from the state at tax sales. Prior to World War II they resold most of the lots located in Hyde Park, Maplehurst, and Westhampton. Petitioners reacquired the Northampton subdivision from the State of Michigan on June 18, 1945. During 1946 petitioners improved the Northampton lots by restaking boundaries, connecting water mains, and repairing the sewers. Roads were built at a total cost of approximately $18,000. Sales of the Northampton lots were handled in 1946 and subsequent years mainly through an agent, James D. Wilson, who had worked for petitioners during the years 1937 through 1942 selling lots in Hyde Park, Maplehurst, and Westhampton. Wilson held a real estate salesman's license issued to him in 1937 under a real estate broker's license issued to Wilson Critzer some time prior to that year. During 1946 signs were erected advertising the Northampton lots for sale, and throughout the taxable years involved Wilson spent week ends at Northampton where he answered inquiries of prospective purchasers. Pennants were put up on such occasions to attract further attention. *44 During the week Wilson answered telephone inquiries referred to him and showed lots by appointment. Sales of lots in petitioners' subdivisions other than Northampton during the taxable years involved were made by Wilson and by petitioners themselves, although Wilson Critzer, because of his failing health, did little more than sign necessary deeds and land contracts which were prepared by Wilson. During the taxable years 1946 to 1948, inclusive, petitioners engaged in the following real estate transactions: Lots
Trans-
Cost and sales
sold
actions
expense
Sales price
Gain
1946
Northampton
33
20
$13,200.20
$32,755.00
$19,554.80
Laurelhurst
28
3
1,970.00
7,000.00
5,030.00
Maplehurst
13
5
3,093.08
19,674.70
16,581.62
Hyde Park
9
2
560.00
1,000.00
440.00
Southampton
10
5
1,100.00
2,778.95
1,678.95
1947
Northampton
28
22
12,940.02
30,921.00
17,980.98
Maplehurst
14
1
990.00
2,800.00
1,810.00
Hyde Park
68
2
6,000.00
11,500.00
5,500.00
1948
Northampton [1]
9
6
3,351.60
9,650.00
6,298.40
Westhampton
4
1
3,100.00
7,500.00
4,400.00
*45 Of the 35 parcels of land sold by petitioners during 1946 they received as consideration cash in 8 of the transactions and the purchasers executed land contracts which provided for a down payment and monthly payments for the balance of the purchase price due, and in the remaining 27 parcels petitioners executed land contracts. Seven of the 25 transactions in 1947 were cash sales while the remaining 18 involved land contracts. Three of the 7 transactions in 1948 were for cash and 4 involved land contracts. Petitioners did not receive notes or other evidence of indebtedness which commonly changes hands and is recognized in commerce as the equivalent of cash. On their joint income tax return for 1946 petitioners reported realized gains from the sale of 23 parcels of land by land contracts and computed the gains thereon by deducting the cost of the property, plus the sales expenses, from the total amounts received as down payments and monthly land contract payments. Petitioners did not recover the cost of the lots sold in 4 of their 1946 transactions and in those instances reported the difference between the amount received and the cost basis as a capital loss. In reporting their *46 income taxes for 1947 and 1948, petitioners computed the gain or loss resulting from each of their real estate sales during those years in the same manner as reported for 1946. During 1946 petitioners paid rent of $339.45 for an office maintained in connection with their real estate business. During each of the taxable years 1946 to 1948, inclusive, petitioners were engaged in the real estate business. The real estate sold during the years in question was held primarily for sale to customers in the ordinary course of such business. The land contracts received by petitioners in each of the taxable years involved were not the "equivalent of cash," and the only "amount realized" by petitioners on the sale of the vacant lots was the sums of cash received. Opinion LEMIRE, Judge: The first question presented is whether for the taxable years involved the gains realized from the sale of certain vacant lots are taxable as ordinary income or as profits from the sale of capital assets. In determining whether the sales in question involve properties held primarily for sale to customers in the ordinary course of business or properties held for investment presents a factual question *47 involving a consideration of all the pertinent facts and circumstances. Higgins v. Commissioner, 312 U.S. 212; Mauldin v. Commissioner, 195 Fed. (2d) 715; King v. Commissioner, 189 Fed. (2d) 122, certiorari denied, 342 U.S. 829; South Texas Properties Co., 16 T.C. 1003. The courts have advanced a number of tests that may be applied in determining the question. Among the factors primarily emphasized are the purpose for which the property was acquired, the purpose for which it was held at the time of sale, the continuity, frequency, and substantiality of the transactions involved, and the sales activities in relation thereto. The record shows that during the 1920's petitioners acquired vacant farm lands which they subdivided, improved with water mains and sewers, and sold in small parcels to individuals on land contracts. During the depression years many purchasers defaulted on their contracts and petitioners reacquired most of the lots, but because of their financial inability to pay the property taxes they lost all of their lots to the state. By the mid-1930's petitioners began repurchasing their property from the *48 state. With the exception of the war years petitioners engaged in selling the recovered lots. Salesmen were employed and further improvements made to some of the subdivisions in order to make the property more marketable. After a careful consideration of all of the facts and circumstances set out in detail in our findings of fact, we think the pattern and the continuous course of conduct as revealed by this record indicate rather conclusively that the petitioners were actively engaged in the real estate business during the taxable periods in question. The frequency, substantiality, and continuity of the sales clearly demonstrate that the real properties involved were held primarily for sale to customers in the ordinary course of their business and were not held for purposes of investment. Petitioners contend that their sales resulted from a desire to liquidate. However, such fact does not prevent the sales from being in furtherance of an occupation or business, Palos Verdes Corp. v. United States, 201 Fed. (2d) 256; Ehrman v. Commissioner, 120 Fed. (2d) 607, certiorari denied, 314 U.S. 668; and Spanish Trail Land Co., 10 T.C. 430, *49 nor does the fact that petitioners acquired no property other than the six subdivisions over the period of years in which they were selling the lots, Snell v. Commissioner, 97 Fed. (2d) 891, or that many sales were conducted through an agent, Brown v. Commissioner, 143 Fed. (2d) 468; and Ehrman v. Commissioner, supra. We hold that the sales of real properties made by the petitioners in the taxable years 1946 to 1948, inclusive, were of properties held primarily for sale to customers in the ordinary course of the petitioners' real estate business, and the gains realized are taxable as ordinary income. The respondent's determination on this issue is therefore sustained. The second question is whether the respondent erred in determining that for each of the taxable years the land contracts received from purchasers by petitioners were the equivalent of cash to the extent of their face value. As consideration for the sales in question petitioners received a cash down payment and the purchasers' contractual obligation to pay the balance of the purchase price in deferred payments. Petitioners, who reported their income on the cash receipts and disbursement *50 method of accounting, deducted, in the year of sale, the basis of the property, plus selling expenses from the cash payments received during the year, treating the land contracts as having no fair market value. In most instances petitioners recovered their cost during the year of sale and reported the excess as capital gain, and where the cost was not recovered petitioners claimed the difference as a loss. In years subsequent to the recovery of their costs the cash payments were reported as capital gains. It is clear that petitioners realized gain from their land contract sales only to the extent that the "amount realized" therefrom exceeded the basis of the property sold. Sec. 111(a)(b)(c), I.R.C. (1939). [1] Respondent and petitioners are agreed as to the basis and the amounts of money received by petitioners during each of the taxable years, but are in disagreement as to the "amount realized" from the sales. The obligation of the purchaser under the land contracts to pay the balance of the purchase price in deferred payments is not to be considered as an "amount realized" unless it is the equivalent of cash. Respondent determined that the contractual obligations were the equivalent *51 of cash to the extent of the face value of the land contracts. We are of the opinion that the instant proceeding is not distinguishable from and is therefore governed by our decision in Nina J. Ennis, 17 T.C. 465, dismissed and affirmed by stipulation, Fed. (2d) . See also Harold W. Johnson, 14 T.C. 560, *52 and Helvering v. Nibley-Mimnaug Harold W. Jhnson, 14 T.C. 560, and Helvering v. Nibley-Mimnaugh Lumber Co., 70 Fed. (2d) 843. Here, as in Nina J. Ennis, the land contract itself was not given or accepted as consideration for a part of the purchase price of the land. It merely evidenced the purchaser's personal promise to pay future cash payments on the balance remaining over and above the amount of the down payment. The promise to pay was not embodied in a note or other evidence of indebtedness which is recognizable to some extent as the equivalent of cash. We hold that the land contracts received from purchasers by petitioners were not the equivalent of cash and the "amount realized" by petitioners on the sale of the vacant lots in each of the taxable years was the cash amounts received. To the extent that such amounts exceeded the basis of the property sold, petitioners received ordinary income. Respondent, therefore, erred in his determination. The final issue is whether, in the event it is held that the sales in question involved properties held primarily for sale to customers in the ordinary course of business, petitioners incurred certain expenses *53 in connection with such sales which they failed to claim as deductions in reporting their income for each of the taxable years involved. Respondent on brief concedes that during 1946 petitioners paid rent of $339.45 for an office maintained in connection with their real estate business. As the petitioners offered no evidence with respect to any business expenses, the conceded amount of $339.45 is allowed as a business deduction for the year 1946. Decisions will be entered under Rule 50. Footnotes
1. Two of the parcels originally sold by petitioners in 1946 for a total of $1,542 were repossessed and resold during 1948.↩
1. SEC. 111. DETERMINATION OF AMOUNT OF, AND RECOGNITION OF, GAIN OR LOSS. (a) Computation of Gain or Loss. - The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized. (b) Amount Realized. - The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received. (c) Recognition of Gain or Loss. - In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized for the purposes of this chapter, shall be determined under the provisions of section 112.↩