LOUISIANA WESTERN LUMBER COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 38643, 48798.   Filed July 19, 1954.

*A. Leon Hebert, Jr., Esq.*, for the petitioner.
*Jackson L. Bailey, Esq.*, for the respondent.

OPINION.

JOHNSON, *Judge:* The sole difference between the parties under the principal issue is whether the gain realized each year from sales of lots is taxable as ordinary income or as capital gain. The issue is a factual question and turns upon whether the lots constituted "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." Sec. 117 (a) (1), I. R. C. We said in *W. T. Thrift, Sr.,* 15 T. C. 366, 369, in connection with a like question:

The governing considerations have been the purpose or reason for the taxpayer's acquisition of the property and in disposing of it, the continuity of sales or sales related activity over a period of time; the number, frequency, and substantiality of sales, and the extent to which the owner or his agents engaged in sales activities by developing or improving the property, soliciting customers, and advertising. *Boomhower* v. *United States,* 74 F. Supp. 997. No one of these tests can be regarded as determinative but the question must be viewed in the light of all pertinent factors and particularly the facts of the individual case.

See also, *Martin Dressen,* 17 T. C. 1443; *Dunlap* v. *Oldham Lumber Co.,* 178 F. 2d 781; and *Nathan D. Goldberg,* 22 T. C. 533.

The acquisition of parcels of land and their improvement as subdivisions for sale of lots to purchasers are evidences of intention to engage in the real estate business. Petitioner had two of such land developments, and in addition purchased lots in other subdivisions for sale in the ordinary course of its activities, the last of which acquisitions, consisting of 35 lots, was made in 1950, 10 years after the first tract of land was purchased for subdivision purposes. The second tract of land for subdivision purposes was acquired in 1946, when at least 60 lots were unsold in the first subdivision, known as Victory Terrace, the last of the lots in which were not disposed of until 1948. The extent of petitioner's holdings and activities in the sale of real

estate is shown by the fact that it held 351 lots in about 6 subdivisions at the beginning of the taxable years and 99 full lots at the close of 1950.

The sales were not only continuous during the taxable years and prior thereto since 1941, but were continued under the same plan of activities in 1951. The sales were substantial, ranging from 33 to 49 during the taxable years, of from 50 to 120 lots at a profit equal to from about 20 to 40 per cent of the net income from other sources without adjustment for transfers at cost. The high rate of profit made on the sales of lots is shown in our findings.

The fact that petitioner designated no branch of its chief business as real estate department, and did not have a license to sell lots is not decisive. The sales were handled by its employees as effectively as though they had acted under a special employment. A business may be conducted through an agency. *Florence H. Ehrman*, 41 B. T. A. 652, 663, affd. 120 F. 2d 607. The fact that commissions were claimed in 1949 and 1950 as selling expenses is evidence of employment of brokers to sell lots. No contention is made that petitioner was required to have a license to sell its own property.

Sales made to contractors were at a discount and subject to a requirement that the vendees purchase from petitioner their requirements of building material to improve the lots. Except for 1950, as to lots sold, the number of lots sold and sales each year to individuals without a tie-in agreement exceeded sales to contractors subject to such an agreement.

While petitioner did not advertise the lots it listed them for sale with the White Agency, a subsidiary corporation, coupled with an agreement to purchase building material from it. Petitioner, which had the burden of overcoming the presumption in favor of the correctness of the respondent's determination, offered no evidence to establish that the White Agency did not advertise the lots or otherwise actively engage in the solicitation of customers.

Petitioner asserts that the initial acquisition of property was made as an investment to construct badly needed housing units and that upon the termination of the war the activity was continued to advance its lumber and building material business.

Property acquired and held as an investment may in a subsequent year be liquidated in a business venture within the meaning of section 117 (a) (1). *Florence H. Ehrman, supra.* The important question is the conditions under which it is held and disposed of in the taxable years.

The fact that one of the motives for acquiring the property was to sell it under a plan that would advance the lumber and building material business cannot affect the result, for the answer is the same whether the activities were carried on as an integral part of a recog-

nized business, or one separate and distinct from it. If the property is held as prescribed by the statute it is not a capital asset and any gain resulting from sales is taxable as ordinary income. A taxpayer may engage in more than one business. *Williamson* v. *Commissioner*, 201 F. 2d 564, affirming 18 T. C. 653.

Lots were sold without tie-in agreements and it does not appear that petitioner ever declined an offer of purchase because the offeror refused to agree to buy building material from it. Nothing here is opposed to the idea that at all times during the taxable years the property was for sale to the general public. The restrictions on building material were lifted in 1945 or 1946 and thereafter, while no shortage existed in lumber or other building material and petitioner enjoyed a good market for its products, some business was declined to meet the demand of regular customers and, as already pointed out, petitioner acquired additional lots for sale under its plan.

While petitioner admits that the issue is controlled by the peculiar facts and cites no case as controlling, it refers us to several cases in its favor.

In *W. T. Thrift, Sr.*, *supra*, the taxpayer made no effort to sell or subdivide the land prior to the taxable year. The subdivision was made to facilitate the sale of lots to selected builders, pursuant to an agreement with them. No effort was made to sell to the general public and offers of individual purchasers were refused. The property was never listed with a real estate agent. Those facts are not present here. In *Dunlap* v. *Oldham Lumber Co.*, *supra*, the sales were made in isolated transactions. No showing was made that the sales promoted the principal business of the taxpayer and there was no continuity of sales, contrary to the facts here.

The facts present here support, rather than overcome, the determination of the respondent that the lots in question were held primarily for sale to customers in the ordinary course of a business.

Petitioner concedes that a conclusion in favor of respondent under the principal issue will leave it without capital gain from which to deduct a capital loss of $2,800 sustained by it. Accordingly,

*Decisions will be entered for the respondent.*