Stephen G. Achong v. Commissioner.
Achong v. Commissioner
Docket No. 33319.
United States Tax Court
T.C. Memo 1956-73; 1956 Tax Ct. Memo LEXIS 222; 15 T.C.M. (CCH) 377; T.C.M. (RIA) 56073; March 26, 1956
*222 Samuel P. King, Esq., and Herbert C. Dunn, C.P.A., for the petitioner. E. A. Tonjes, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income tax for the years 1946 and 1947 in the respective amounts of $10,799.76 and $1,105.69. The sole question presented is whether the income realized by petitioner from the sale of real property in the taxable years involved is taxable as ordinary income or capital gain. Nearly all the facts are stipulated and are found accordingly. Findings of Fact Petitioner is a citizen of the United States and a resident of the City of Honolulu, Territory of Hawaii. His returns for the years involved were filed with the collector of internal revenue for the district of Hawaii at Honolulu, Hawaii. Pursuant to a Special Homestead Agreement dated December 31, 1914, the petitioner was issued a land patent covering 11.55 net acres of Government land at Halekou, Territory of Hawaii. In 1915 petitioner erected a dwelling on said land and has since occupied the dwelling as his home. From time to time until 1946 petitioner leased under short-term agreements portions of the *223 land to various tenants for farming purposes. Petitioner was employed as a cashier by Metropolitan Meat Market from 1914 until his retirement in 1950. Petitioner has never owned any other real estate. In 1946 Samuel W. King, a real estate broker, discussed with petitioner the sale of his homestead property, and on June 27, 1946, a written agreement was entered into between them. The agreement describes King as "a licensed real estate broker experienced in matters relating to sales of real estate." It provides that the petitioner grant to King the exclusive right, power, and authority to prepare for sale and to sell petitioner's 11.55 acres. Under the terms of the agreement King was to hire and supervise surveyors and contractors as needed for preliminary planning and for putting the property in condition for sale in accordance with any approved plan of subdivision, the final plan of subdivision to be subject to petitioner's approval. Any plan of improvement was subject to petitioner's approval as to cost. King was to be reimbursed by petitioner for all expenses of preparing the property for sale, including without limitation the cost of surveying, mapping, and improving said *224 property, and perfecting title. King was to pay all costs of promotion, advertising, and all other costs necessary for the sale. King was to keep complete records and books of account which were to be open to petitioner's inspection. The agreed sales price was to be not less than an average of 25 cents per square foot, the final prices and terms of sale to be agreed upon. King was to receive 10 per cent commission of the gross sale and 2 1/2 per cent of monthly payments on account of sales on terms other than for cash. Pursuant to said agreement King prepared a plan of proposed subdivision which was approved by petitioner. On August 1, 1946, the City Planning Commission of the City of Honolulu gave preliminary approval and on January 15, 1948, gave final approval to the plan of subdivision. On October 22, 1946, King, with the approval of petitioner, entered into a contract with the Paul Low Engineering & Construction Company for the construction of the necessary improvements. Costs of the survey, subdivision, construction and file plans, and final staking out were charged and paid for separately. Between November 25, 1946, and February 17, 1947, the Paul Low Engineering & *225 Construction Company billed to King and was paid the aggregate amount of $32,000. The charges for surveying, etc., paid by King totaled $3,000. All the payments were charged to the account of petitioner on the books of King. Petitioner reserved Lots 16, 32, and 33. Lot 16 included the dwelling occupied by petitioner. Lots 32 and 33 were reserved for future business use. King prepared forms to be used in connection with the sale of lots. These forms inluded a deposit receipt and contract, deed and mortgage. During the period July 18, 1946, to November 19, 1946, deposit receipt and contract forms were executed by purchasers for the 30 lots offered for sale. King received all payments, processed all papers, and made all disbursements. He made appropriate entries in petitioner's account and rendered periodic statements to petitioner. All sales were made by King without advertising of any kind. No "For Sale" signs were erected on the property. King maintained a real estate office which indicated he had property of the type here in question for sale. All the lots were sold through the activities of King either by contacting persons whom he believed to be prospective purchasers or by *226 suggesting to persons contacting him that the lots were for sale. On occasion prospective purchasers contacted petitioner, who referred them to King. Petitioner took no part in negotiating any sales. In his returns for the years 1946 and 1947 petitioner elected to return the gains from the sale of lots on the installment basis. The gain realized in 1946 was $35,199.48, and in 1947 was $6,504.39, 50 per cent of which was taken into account as long-term capital gain. The respondent determined that the total gain realized in the respective taxable years was ordinary income. The lots in question were lands held by petitioner primarily for sale to customers in the ordinary course of his trade or business, and the gain realized from the sales in the taxable years involved is taxable as ordinary income. Opinion LEMIRE, Judge: The question presented is whether the gain realized each year from the sales of lots is taxable as ordinary income or as capital gain. The respondent determined that the lots constituted property held by the petitioner primarily for sale to customers in the ordinary course of his trade or business. Section 117(a)(1), Internal Revenue Code of 1939. Neither the *227 facts nor the amounts involved are in dispute. The cases in which a similar issue has been litigated are legion. The courts have applied various tests, none of which are regarded as determinative. The issue is one of fact and the question must be viewed in the light of the particular facts of the case under review. Louisiana Western Lumber Co., 22 T.C. 954; Dunlap v. Oldham Lumber Co., 178 Fed. (2d) 781; Mauldin v. Commissioner, 195 Fed. (2d) 714. Petitioner acquired the property, consisting of 11.55 acres, in 1914 under a patent granted by the Territory of Hawaii. A dwelling was erected thereon which petitioner has since occupied as his residence. Petitioner devoted a portion of the land to raising vegetables, and from time to time rented other portions to tenants for similar purposes. Petitioner never owned other real estate. He was employed full time as a cashier in a market. Prior to the taxable years the character of the neighborhood changed from a rural to a residential community. Surrounding homestead lands were subdivided and sold for residential lots. The property had appreciated in value and petitioner was urged by relatives and *228 friends to sell. Petitioner chose not to sell the property in the condition in which it was acquired and thus have the benefit of the preferred treatment of capital gains, but to subdivide it and make improvements to reap the benefits of increased selling prices. To accomplish his purpose he entered into a contract with Samuel W. King, a licensed real estate broker experienced in the sale of real property. The substance of such contract is set forth in our findings of fact and need not be here repeated.
The contract with King did not effect a sale of the property. Nor was King an independent contractor since his major activities were subject to the approval of petitioner. The fact that petitioner was otherwise employed and did not give his personal attention to the business is not decisive. One may conduct a business through agents or representatives. The business is none the less his because he permits others to bear the burden of management. Welch v. Solomon, 99 Fed. (2d) 41; Richards v. Commissioner, 81 Fed. (2d) 369. As King was acting merely as agent, his activities are to be imputed to petitioner as the principal. Commissioner v. Boeing, 106 Fed. (2d) 305, *229 certiorari denied, 308 U.S. 619. In our opinion this record supports our ultimate finding of fact that the lots in question were held primarily for sale to customers in the ordinary course of a business. Therefore, we hold that the gain re alized from the sale of the lots in the respective taxable years is taxable as ordinary income and not as capital gain. Accordingly, Decision will be entered for the respondent.