R. W. Winston, Jr. v. Commissioner.
Winston v. Commissioner
Docket No. 35803.
United States Tax Court
T.C. Memo 1956-91; 1956 Tax Ct. Memo LEXIS 203; 15 T.C.M. (CCH) 477; T.C.M. (RIA) 56091; April 18, 1956
*203 Gain on sale of real estate: Capital gain or ordinary income. - Upon the evidence, held that tracts and lots of real estate sold by petitioner in 1947 were held primarily for sale to customers in the ordinary course of business, and the gain realized constituted ordinary income rather than capital gain. Paul F. Smith, Esq., William T. Joyner, Esq., and Thomas F. Ellis, Esq., for the petitioner. Ralph V. Bradbury, Jr., Esq., for the respondent. ATKINS
Memorandum Opinion ATKINS, Judge: The respondent determined a deficiency in income tax for the year 1947 in the amount of $1,218. This deficiency resulted from several adjustments. The parties are now agreed that the proper amount allowable as bad debt deductions is $1,351.92. The petitioner concedes that the respondent was correct in all other adjustments *204 made, and the parties further agree that the proper amount of deduction on account of medical expenses will automatically follow, based upon the adjusted gross income as finally determined in accordance with our opinion herein. These concessions and agreements will be given effect in the recomputation under Rule 50. In his answer the respondent prayed for an increased deficiency of $6,630.43, pursuant to the provisions of section 272(c) of the Internal Revenue Code of 1939, on the ground that 68 lots sold by the petitioner during the taxable year were property held primarily for sale to customers in the ordinary course of the petitioner's trade or business and that accordingly the full amount of the gain realized is to be included in the petitioner's income. In his returns the petitioner had treated the gain as long-term capital gain and included in income only one-half thereof, and the respondent did not make any change in this respect in the notice of deficiency. Thus, the only issue now before us for consideration is whether the gain realized was ordinary income or long-term capital gain. The facts were stipulated and as so stipulated are incorporated herein by reference. *205 [Findings of Fact] The petitioner resided in the City of Raleigh, North Carolina, during the calendar year 1947. He filed his 1947 income tax return with the collector of internal revenue for the district of North Carolina. The petitioner acquired, or acquired an interest in, certain lands in Wake County, North Carolina, as shown in the following tabulation: No. of
Year
Lots in
Year
Plat
Original
Tract of Land
Acquired
Filed
Plats
Wake Hills
1927
1928
73
Wake Hills Revised
1927
1939
61 *
Forty Acres
1927
1942
58
Four Acres
1934
1945
26
San Domingo
1934
1949
36
Hayes-Barton Ter-
race
1936 &
1946
37
1945
The tracts of land referred to as Forty Acres and Wake Hills were purchased by the petitioner as one tract in 1927. It was undeveloped county property, and lay outside of the city limits of Raleigh. Thereafter lots from the subdivision were sold by deeds containing restrictive covenants so that petitioner could not only control the type of neighbors he would *206 have, but the character of the neighborhood and the buildings constructed on the lots sold. The property described above as Wake Hills and Wake Hills Revised was subdivided by the petitioner prior to 1942. Sewer lines and water mains were installed by the petitioner prior to 1942. Prior to 1945 the petitioner purchased certain lots in Sunset Hills from R. A. Bashford in order to make a contiguous plot of ground of the areas described above as Forty Acres and Four Acres. In November 1941, the petitionr subdivided the property described as Forty Acres. At that time Churchill Road and Hathaway Road were cut through the property as dirt streets by the petitioner. In May 1945, the petitioner had the area known as Forty Acres resurveyed and a revised plat was filed with the Register of Deeds, Wake County, North Carolina, on May 26, 1945, which covered the combined areas described as Forty Acres and Four Acres and the property purchased from Bashford. The parcel of land acquired by the petitioner in 1934 in the subdivision known as San Domingo, near Raleigh, North Carolina, was at that time subdivided into oneacre tracts. In 1949 this property was resubdivided into lots 80feet X *207 140feet. The property described above as Hayes-Barton Terrace was subdivided by the petitioner in June 1946. The petitioner cut certain dirt roads through this property known as Craig Street and Wilshire Avenue. The petitioner also cut a street, Pineview Street, extending from Wilshire Avenue to Craig Street. All of the tracts described in the tabulation above, except Hayes-Barton Terrace, are contiguous tracts separated only by streets. The following schedule shows the number of lots from the tracts referred to above that were sold by the petitioner during the years 1946 to 1950, inclusive, and the total amount received from the sales: Tract of Land
1946
1947
1948
1949
1950
Wake Hills
1
4
4
2
4
Forty Acres
5
2
4
6
21
Four Acres
1
San Domingo
3
1
11
3
Hayes-Barton Terrace
1
23
5
Total Lots
11
30
13
19
28
Amount Received
$16,555.00
$33,515.25
$10,540.79
$20,869.50
$46,595.28
The petitioner owned only a one-half interest in three of the Hayes-Barton Terrace lots sold in 1947. The petitioner sold miscellaneous parcels of real estate, not included in any of the subdivisions described above, as follows: No. of
Dollars
Year
Number
in Sales
1946
1
$1,250.00
1947
4 (4 lots)
2,214.08
1948
4 (4 lots)
5,021.18
1949
6 (4 lots)
9,697.83
*208 In addition to the foregoing sales, petitioner in the year 1948 sold a single tract of ground at a total selling price of $14,500. During the year 1948, the petitioner sold his home place on Chester Road and capital gain treatment on this property was allowed by the respondent. In 1936 the petitioner acquired a one-half interest in property in Cumberland County, North Carolina, later designated as Cumberland Heights and Fairfax Place. At the time of the purchase the property was farm land and was cultivated for the production of farm crops for several years after the purchase by the petitioner of his interest therein. The petitioner's first wife owned the other one-half interest in this property, having acquired the same by the will of her first husband in 1918. In 1937 the petitioner subdivided and filed a plat of this property known as Fairfax Place. In 1947 the petitioner subdivided and filed a plat of this property known as Cumberland Heights. In 1942 a highway was constructed through these properties leading from Fayetteville, North Carolina, to Fort Bragg, which materially enhanced the value of the property and made it desirable for home construction. Petitioner's first *209 wife died intestate in 1944, and her one-half interest in the land was inherited by petitioner's three minor children. Petitioner was appointed guardian of these children by the Superior Court of Wake County, on January 12, 1945. All of the lots sold during 1946 through 1950 from this property were sold by the authority of the court. On all occasions the petitioner, in his capacity as guardian, filed a petition with the court requesting authority for such sales. On all occasions the court authorized the sale of the property in the tracts Cumberland Heights and Fairfax Place. During the years 1946 through 1950, the number of lots sold from Cumberland Heights and Fairfax Place and the amounts received (including money received for the interest of petitioner's children, as well as for his own interest) were as follows: No. of
Amount
Year
Lots
Received
1946
74
$23,900.00
1947
32
12,425.00
1948
67
26,100.00
1949
41
14,825.00
1950
5
1,519.34
The lots above listed were conveyed as follows: 1946 1 conveyance of 25 lots to Godwin and Blue 1 conveyance of 28 lots to Godwin and Blue 1 conveyance of 19 lots to Rose 1 conveyance of 2 lots to *210 Rose 1947 1 conveyance of 3 lots to Ipock and wife 1 conveyance of 28 lots to Godwin 1 conveyance of 1 lot to Clayton 1948 1 conveyance of 2 lots to Godwin 1 conveyance of 20 lots to Godwin 1 conveyance of 45 lots to Godwin 1949 1 conveyance of 26 lots to Godwin 1 conveyance of 15 lots to Godwin 1950 1 conveyance of 5 lots to Boulevard Homes, Inc.
In the guardianship accounting statement, covering the period January 12, 1945 to December 15, 1949, it is shown that amounts were expended in connection with Cumberland Heights and Fairfax Place as follows: Cost Allocable to
Total
Expendi-
Guardian-
R. W.
Date
Description
ture
ship
Winston
3/22/46
E. W. Grannis - Grading Streets
$ 192.75
$ 96.38
$ 96.38
4/ 1/46
E. W. Grannis - Motor Grader
103.60
51.80
51.80
5/10/48
Paul Nystrom - Staking out Lots on
100.00
50.00
50.00
Anarine Road
5/10/48
R. W. Winston - Tip to Bulldozer
7.00
3.50
3.50
Operator
5/15/48
E. W. Grannis Co. - Rent of Bulldozer
145.00
72.50
72.50
12/22/48
City of Fayetteville - Installing Pipe
1,300.00
650.00
650.00
Lines
12/22/48
J. S. McFayden - Bulldozer Work
383.75
191.87
191.87
12/:/48
F. M. Averitt - Map of Cumberland
250.00
125.00
125.00
Heights
*211 The guardianship accounting statement also shows the following expenditures by the petitioner: Cost Allocable to
Total
Expendi-
Guardian-
R. W.
Date
Description
ture
ship
Winston
3/29/46
R. W. Winston - Six Trips to
$50.00
$25.00
$25.00
Fayetteville
5/22/46
R. W. Winston - Three Days
30.00
15.00
15.00
Traveling Expense
2/24/47
R. W. Winston - Three Trips to
30.00
15.00
15.00
Fayetteville
4/ 8/47
R. W. Winston - Telephone Calls
8.20
4.10
4.10
4/19/47
R. W. Winston - Three Trips to
50.00
25.00
25.00
Fayetteville
12/19/47
R. W. Winston - Telephone Calls
6.10
3.05
3.05
1/14/48
R. W. Winston - Telephone Calls
5.35
2.68
2.68
R. W. Winston - Two Trips to
15.00
7.50
7.50
Fayetteville
5/10/48
R. W. Winston - Telephone Calls
6.54
3.27
3.27
R. W. Winston - Trip to
8.00
4.00
4.00
Fayetteville
R. W. Winston - Automobile Expense
10.00
5.00
5.00
R. W. Winston - Hotel
9.00
4.50
4.50
R. W. Winston - Meals
5.00
2.50
2.50
12/22/48
R. W. Winston - Four Trips to
38.00
19.00
19.00
Fayetteville
2/27/49
R. W. Winston - Trip to
7.00
3.50
3.50
Fayetteville
2/27/49
R. W. Winston - Expenses to
10.00
5.00
5.00
Fayetteville
*212 The guardianship accounting statement shows that in 1946 and 1948 taxes were paid to Cumberland County on 147 acres of land, of which one-half was borne by petitioner. There were approximately 290 lots in the two subdivisions Cumberland Heights and Fairfax Place. R. W. Winston, Jr., petitioner, was licensed to practice law in 1915. He was an active practitioner, devoting substantial time to the practice of law until 1939 when his health failed and he was forced to abandon his practice. At that time the petitioner took up farming and from 1940 until 1942 operated a lumber plant, manufacturing and dressing lumber. Petitioner has continuously owned and operated farm properties from that time until the present. During the period from 1941 to 1948, inclusive, the petitioner shared an office and for a part of that time a secretary with Mr. Sim Wells, who was a licensed real estate broker. Mr. Sim Wells acted as the petitioner's real estate broker on substantially all of the sales of properties in the areas known as Forty Acres, Four Acres, San Domingo and Hayes-Barton Terrace. The petitioner sold real estate during the years 1946 to 1950, inclusive. From 1948 to 1952, the petitioner *213 served as chairman of the North Carolina ABC Board. Petitioner has never held a real estate broker's license and has never paid an occupational tax as a realtor. In all sales made in 1946 to 1950, inclusive, with two exceptions, and except in the case of sales of Cumberland County property, a real estate broker handled the sales and a commission was paid in each instance. The petitioner's returns for the years 1945 to 1951, inclusive, show the following regarding the number of his sales of tracts or lots, the total selling price thereof, the net gain on such transactions and the net income from all sources: Tracts
Total
Net Income
Year
or Lots
Selling Price
Net Gain
From all Sources
1945
7
$37,266.67
$10,399.81
$ 8,491.99
1946
85
37,242.50
23,487.78
4,496.43
1947
68
41,845.75
32,353.49 [1]
877.18
1948
69 [2]
95,312.01
39,785.84
3,411.95
1949
26 [3]
31,525.00
17,170.23
5,264.07
1950
30 [4]
55,119.34
40,005.48
23,055.94
1951
22
57,100.00
37,647.14
31,072.77
*214 In his Federal income tax return for 1947 the petitioner showed gain or loss realized on the sale of the 68 lots as follows: No. of Lots
Name of Subdivision
Gain (Loss)
4
Wake Hills, Raleigh
$ 1,250.00
34
Cumberland Heights, Fayetteville
4,212.42
1
San Domingo, No. 88
1,292.95
4
Sunset Hills
(331.36)
2
Forty Acres
577.72
20
Hayes-Barton Terrace
23,423.63
1/2 interest in 3
Hayes-Barton Terrace
1,928.13
Net Gain
$32,353.49
Petitioner on his Federal income tax return for the calendar year 1947 reported the gain or loss on each of the lots referred to as long-term capital gain or loss from the sale of capital assets and included in his taxable income on such return only one-half of such net gain, viz., $16,176.75. In the notice of deficiency from which this appeal is taken, the respondent did not make any adjustment of this figure. By affirmative allegation in his answer the respondent alleges that the gain or loss on each of the 68 lots arose from the sale of property held by petitioner primarily for sale to customers in the ordinary course of his trade or business, and that the full amount of gain realized on the sale of such 68 lots *215 is includible in income. [Opinion] Section 117 of the Code, as applicable to the year 1947, provides as follows: "SEC. 117. CAPITAL GAINS AND LOSSES. "(a) Definitions. - As used in this chapter - (1) Capital Assets. - The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include - (A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; * * *
"(b) Percentage Taken Into Account. - In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net capital gain, net capital loss, and net income: 100 per centum if the capital asset has been held for not more than 6 months; 50 per centum if the capital asset has been held for more than 6 months." Since the issue of whether the 68 lots were held by the petitioner primarily *216 for sale to customers in the ordinary course of his trade or business was raised by the respondent by affirmative pleading in his answer, the burden of proof is upon him. Rule 32 of the Rules of Practice of this Court. This is recognized by both parties. Numerous cases dealing with this subject have been decided, but no formula has been developed by which a determination can be made in a particular case with precision and finality. Many factors have been considered by the courts, such as the purpose of acquiring and disposing of the property, the continuity of sales, or sales-related activity over a period of time, the number, frequency, and substantiality of sales, and the extent of the activities of the taxpayer or his agents in developing, improving and selling the property. However, no one factor is decisive and in the final analysis each case must be decided in the light of its particular facts. Louisiana Western Lumber Co., 22 T.C. 954; Mauldin v. Commissioner (C.A. 10), 195 Fed. (2d) 714, affirming C. E. Mauldin, 16 T.C. 698. We turn to a consideration of the evidence submitted in the instant proceeding. Property known as Forty Acres *217 was purchased by petitioner in 1927 as undeveloped county property, was subdivided by petitioner in November 1941, and two dirt streets were cut through the property. The petitioner filed plats of this subdivision in 1942. In 1945 petitioner had this property resurveyed and a revised plat was filed covering that property and other property known as Four Acres, and Sunset Hills property purchased from one Bashford. Petitioner had also acquired in 1927 property known as Wake Hills as undeveloped county property. Prior to 1942 the petitioner had subdivided this property and property known as Wake Hills Revised and had installed sewer lines and water mains. In 1934 petitioner had acquired property known as San Domingo which had been divided into 1-acre tracts. Petitioner re-subdivided this into smaller lots in 1949 and filed a plat thereof in that year. Petitioner acquired property known as Hayes-Barton Terrace in 1936 and in 1945. It was subdivided by him in June 1946, and three dirt roads were cut through the property. A plat of this subdivision was filed in 1946. From the above subdivisions, the petitioner sold 11 lots in 1946, 30 lots in 1947 (the taxable year involved) and 13 lots *218 in 1948. Petitioner acquired a one-half interest in certain property in Cumberland County in 1936, which was farm land and which for several years after acquisition was farmed. In 1937 he subdivided a part of this property called Fairfax Place and filed a plat thereof. In 1947 he further subdivided some of this Cumberland County property known as Cumberland Heights and filed a plat with regard thereto. From these developments he sold 74 lots in 1946 by 4 conveyances, 32 lots in 1947 by 3 conveyances and 67 lots in 1948 by 3 conveyances. Some amounts were expended from 1946 to 1948 for grading, installing pipe lines and laying out lots in this subdivision, but the amounts were relatively small. The petitioner also sold miscellaneous parcels or tracts of real estate in 1946, 1947 and 1948. Altogether in 1946 the petitioner sold 85 lots or tracts at a total selling price of $37,242.50 and derived a net gain of $23,487.78; in 1947 he sold 68 lots at a total selling price of $41,845.75 and derived a net gain of $32,353.49; and in 1948 he sold at least 69 tracts or lots at a total selling price of $95,312.01 and derived a net gain of $39,785.84. As set forth above, there were also sales *219 of real estate both before 1946 and after 1948. One of the more important tests which has been frequently applied in determining whether property sold was held primarily for sale to customers in the ordinary course of trade or business is whether the sales were numerous, frequent and continuous, as distinguished from being merely isolated or casual. James Lewis Caldwell McFaddin, 2 T.C. 395, affd. (C.A. 5) 148 Fed. (2d) 570; Brown v. Commissioner (C.A. 5), 143 Fed. (2d) 468, affirming a decision of this Court [2 TCM 714,]; Ehrman v. Commissioner (C.A. 9), 120 Fed. (2d) 607, affirming 41 B.T.A. 652; Mauldin v. Commissioner, supra. The evidence in the instant case shows that the sales of tracts or lots by the petitioner in the taxable year, as well as before and after that year, were numerous, frequent and continuous and were not merely isolated or casual sales. The amounts involved in the sales were substantial. These facts, coupled with the petitioner's activities in platting, subdividing and improving the properties, compel the conclusion that the petitioner was engaged, in the taxable *220 year, in the business of selling real estate, and we so hold and find as an ultimate fact. The fact that the sales were conducted principally through a real estate broker is not determinative of the question whether the petitioner was engaged in a business. Brown v. Commissioner, supra; Welch v. Solomon (C.A. 9), 99 Fed. (2d) 41; Snell v. Commissioner (C.A. 5), 97 Fed. (2d) 891, affirming a decision of this Court; and Mauldin v. Commissioner, supra.Nor does the fact that the petitioner was engaged in farming in the taxable year preclude concurrent other activities from amounting to the conduct of another trade or business. Oliver v. Commissioner (C.A. 4), 138 Fed. (2d) 910, affirming a decision of this Court [2 TCM 78,]; Snell v. Commissioner, supra; and C. E. Mauldin, 16 T.C. 698, affd. in Mauldin v. Commissioner, supra.We also hold, and find as an ultimate fact, that the 68 lots sold by the petitioner in 1947 constituted property held by him primarily for sale to customers in the ordinary course of his business. The petitioner argues that the properties, or *221 at least most of them, were originally acquired as investments, that they were held for many years, that the enhancement in value was due to the passage of time and other factors, rather than to the activities of the petitioner, and that consequently the property sold should be considered capital assets within the meaning of section 117. However, in the final analysis, the question is whether in the light of all the evidence the petitioner was, in the taxable year, engaged in the business of selling real estate and whether the property sold in the taxable year was property held by him primarily for sale to customers in that business. Oliver v. Commissioner, supra; Richards v. Commissioner (C.A. 9), 81 Fed. (2d) 369; Mauldin v. Commissioner, supra; Ehrman v. Commissioner, supra. For the reasons which we have set forth above, we have concluded that in the taxable year the petitioner was engaged in the business of selling real estate and that the property in question was held in that year primarily for sale to customers in the ordinary course of that business. "Congress intended that profits and losses arising from the everyday operation *222 of a business be considered as ordinary income or loss rather than capital gain or loss." Corn Products Refining Co. v. Commissioner, 350 U.S. 46. It follows that the gain from the sale of the 68 lots sold in 1947 should be treated as ordinary income rather than long-term capital gain. Decision will be entered under Rule 50. Footnotes
*. The Wake Hills Revised plat which was filed in 1939 showed 61 lots of which 45 were shown on the original plat for Wake Hills filed in 1928.↩
1. Not including gain from sale of McCullers Farm. ↩
2. The return shows only 47 lots sold from Cumberland County property, whereas the stipulation shows that 67 were sold, which would make a total of 89 transactions in 1948. ↩
3. The return shows no sales of lots from Cumberland County property, whereas the stipulation shows that 41 such lots were sold, which would make a total of 67 transactions for 1949. ↩
4. The stipulation shows that there were a total of 33 lots sold in 1950.↩