MILTON S. YUNKER AND LEONNA S. YUNKER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52915. Filed April 26, 1956.

*Louis E. Ackerman, Esq.*, for the petitioners.
*Charles R. Hembree, Esq.*, for the respondent.

**OPINION.**

HARRON, *Judge:* The petitioner contends that all of the parcels making up 71 acres of land were capital assets within the meaning of section 117 (a), 1939 Code, so that gains realized from the sale thereof are entitled to capital gain treatment. The Commissioner has determined that petitioner's efforts to dispose of the property in question constituted the carrying on of a trade or business and that the petitioner, in the taxable years, held the parcels of land primarily

for sale to customers in the ordinary course of her trade or business so that the property cannot be treated as capital assets and comes within the exception set forth in section 117 (a) (1) (A), and within the meaning of section 117 (j). The respondent has determined that the gains from the sales of the parcels are taxable as ordinary income.

The petitioner argues that she was attempting to liquidate an unprofitable investment by the most expeditious and least sacrificial method; that sales were made in rather large individual parcels rather than as a single tract because that was the best and perhaps the only method of liquidating the entire "investment"; that petitioner did none of the things which the courts ordinarily associate with the conduct of the real estate business; and that there was not the degree of frequency and continuity of sales which are usually evidence of carrying on a real estate business. The petitioner refers to cases which have stated the standards to be applied in the consideration and decision of the issue such as *Home Co.* v. *Commissioner*, 212 F. 2d 637; and *D. L. Phillips*, 24 T. C. 435.

The petitioner inherited about 100 acres of farmland, of which the 71 acres involved here is a part, and she held the land which is involved in this proceeding for over 10 years. In order to liquidate a holding of real estate, it is necessary to make sales, and the frequency and substantiality of sales, standing alone, do not put the vendor in the real estate business. *Frieda E. J. Farley*, 7 T. C. 198, 204; and *South Texas Properties Co.*, 16 T. C. 1003. Where the liquidation of an asset is not accompanied by active elements of development and sales activity, the fact of liquidation is not to be disregarded. However, in cases where it has been held that sales of property were not made in such way as to constitute the carrying on of a trade or business, the evidence showed that the sales were essentially in the nature of a gradual and passive liquidation of an asset

In deciding the issue consideration must be given to the actions of the petitioner, and whether the acts of selling unimproved real estate support a finding that the petitioner held the property in question in the taxable years for sale to customers in the ordinary course of a trade or business. In the case of *Louis Greenspon*, 23 T. C. 138, 146, we stated:

Although property is sold to liquidate an investment, the manner in which it is sold or disposed of can constitute a trade or business. *R. J. Richards*, 30 B. T. A. 1131, affd. (C. A. 9) 81 F. 2d 369; *Florence H. Ehrman*, 41 B. T. A. 652, affd. (C. A. 9) 120 F. 2d 607, certiorari denied 314 U. S. 668. The foregoing cases indicate that, if a liquidating operation is conducted with the usual attributes of a business and is accompanied by frequent sales and a continuity of transactions, then the operation is a business and the proceeds of the sale are taxable as ordinary income. Or, as we have said, "It is undoubtedly true that where liquidation of an asset is accompanied by extensive development

and sales activity, the mere fact of liquidation will not be considered as precluding the existence of a trade or business. Where, however, the active elements of development and sales activities are absent, the fact of liquidation is not, in our opinion, to be disregarded." *Frieda E. J. Farley*, 7 T. C. 198, 204.

In this case the sales of parcels of real estate were handled and made by Carpenter, a real estate agent. But this fact cannot be taken as proof that the petitioner was not engaged in a business. Engagement in business through an agent is equally as effective as personal participation. *Welch* v. *Solomon*, 99 F. 2d 41; *Philber Equipment Corporation*, 25 T. C. 88; *Morris W. Zack*, 25 T. C. 676.

Upon consideration of all of the evidence, the following factors emerge as important. There was some developmental activity which consisted of the construction of a road into the property and the running of an electric power line around the road, both of which were done so as to give each parcel in the 65-acre tract an outlet to a road which would lead to the Dixie Highway, and would also make electricity available. A real estate agent was engaged to handle and make sales. Also, there was some advertising of the tract which, in one instance, was handled by petitioner's husband. Also, the 65-acre area was surveyed and subdivided into parcels of 5 acres or more. Beginning in the latter part of 1949 up until August 1954, by which time all of the acreage had been sold, there were frequent sales and there was a continuity of transactions. The sales were made for cash.

The Commissioner has determined that the petitioner carried on activities which constituted the carrying on of a trade or business in which she held the property in question primarily for sale to customers. Upon the petitioner is the burden of proving that this determination is in error. There is an element of failure of proof present in this proceeding. For example, the petitioner has not shown that Carpenter did not make offers of the property to prospective buyers, that Carpenter did not advertise the property for sale or did not let it be known that it was on the market for sale. The petitioner has not shown that her subdivision was made only to meet the requirements of a selected group of buyers pursuant to their request and to an agreement with them as was shown in *W. T. Thrift, Sr.*, 15 T. C. 366, 370.

We do not think that the fact that the property was subdivided into parcels of 5 acres or more rather than into smaller parcels or into building lots is decisive. A taxpayer can hold property primarily for sale to customers in the ordinary course of a trade or business even if the property involved is held in parcels as large as 5 acres each. Customers may be either builders and developers who intend to further subdivide the parcels they purchase for sale to their customers, or customers may be the individuals who purchase individual

lots in a subdivision. The determinative facts are whether the manner in which property is sold or disposed of constituted a trade or business.

We recognize that no one test is controlling, that there is no rule of thumb to use, and that the question must be decided upon consideration of all of the material facts of an individual case. Each case presents its particular facts and circumstances and the activities of one taxpayer will be relatively different than the activities of another taxpayer. One taxpayer's property and activities may be larger and more extensive than those of another taxpayer. Differences in activities are relative matters and the trier of the facts must, as fairly as possible, weigh the differences of degree in applying the recognized tests to a particular set of facts in an individual case. We have endeavored to do that here.

Upon consideration of all of the evidence we are unable to conclude that the sales of the property in question were casual and isolated sales; we think the sales were not casual or isolated and that there was the regularity and continuity of sales which ordinarily constitute the carrying on of a business. We are unable to distinguish this case in principle and in determinative facts from the following authorities: *Richards* v. *Commissioner*, 81 F. 2d 369; *Commissioner* v. *Boeing*, 106 F. 2d 305, certiorari denied 308 U. S. 619; *White* v. *Commissioner*, 172 F. 2d 629; *Home Co.*, *supra; Louisiana Western Lumber Co.*, 22 T. C. 954; *Mauldin* v. *Commissioner*, 195 F. 2d 714, affirming 16 T. C. 698; *Brown* v. *Commissioner*, 143 F. 2d 468; *Gruver* v. *Commissioner*, 142 F. 2d 363; *Ehrman* v. *Commissioner*, 120 F. 2d 607, affirming 41 B. T. A. 652; and *James Lewis Caldwell McFaddin*, 2 T. C. 395, affd. 148 F. 2d 570. It is concluded that the facts here support the determination of the respondent that the parcels of real estate in question were held primarily for sale to customers in the ordinary course of a business. The petitioner has not overcome the prima facie correctness of the respondent's determination.

Although petitioner does not rely upon *W. T. Thrift, Sr.*, *supra*, consideration has been given to that case because there are some similarities in the facts. However, the *Thrift* case is distinguishable because there are not present here facts which make that case controlling. In the *Thrift* case the property in question was never listed with a real estate agent and no effort was made to sell to the general public. Those facts are not present here.

It must be concluded that petitioner's activities in disposing of the property in question had the attributes of a business and that there was the frequency and continuity of transactions which constitute the carrying on of a business. The evidence, in our opinion, shows that the petitioner, in the taxable years, intended that the parcels in her

subdivision should be offered for sale to customers. We conclude that the parcels of property were held in the taxable years primarily for sale to customers in the ordinary course of a business. The respondent's determination is sustained.

The next question to be decided relates to two transactions which were entered into at the end of 1949, one with Thoni and one with Wells. The question is whether, in each instance, the gain was realized in 1949, as petitioner contends, or in 1950 as respondent has determined.

The purchase price of the parcel sold to Thoni was $5,000 which he paid on January 6, 1950, when he received the deed. The sales price of the parcel sold to Wells was $4,400. He made a deposit of $100 when he executed the sales contract in 1949, and he paid $4,300 on January 17, 1950, when a deed was delivered to him; the deposit was applied to the purchase price. Neither purchaser gave a note. The expense of the sale to Wells exceeded $100. There is no proof that the sales contracts had a fair market value or were in any respect the equivalent of cash.

The petitioner contends that the sales were completed transactions in 1949, and, therefore, that the gains are taxable in 1949.

The determination of the question depends not, as the petitioner argues, on whether the sales were completed sales in 1949, but rather upon the fact that petitioner reports income on a cash basis. Cf. *Helvering* v. *Nibley-Mimnaugh Lumber Co.*, 70 F. 2d 843. In *Harold W. Johnston*, 14 T. C. 560, at page 565, we said:

An agreement, oral or written, of some kind is essential to a sale. If payment is made at the same time that the obligation to pay arises under the agreement, then the profit would be reported at that time no matter which method [of accounting] was being used. However, the situation is different when the contract merely requires future payments and no notes, mortgages, or other evidence of indebtedness such as commonly change hands in commerce, which could be recognized as the equivalent of cash to some extent, are given and accepted as a part of the purchase price. That kind of a simple contract creates accounts payable by the purchasers and accounts receivable by the sellers which those two taxpayers would accrue if they were using an accrual method * * *. But such an agreement to pay the balance of the purchase price in the future has no tax significance to either purchaser or seller if he is using a cash system. The petitioner may not thus adopt, for this limited purpose, a feature of an accrual method, but, having always used a cash receipts method of reporting his income, he must adhere consistently to the general rule of that method, which is that no gain is realized until the "amount realized" by receipt exceeds the basis for the property being sold. * * *

It is held that the contractual obligations of Thoni and Wells did not constitute amounts realized in 1949 by the petitioner who reports income on a cash basis. The only "amount realized" by petitioner in 1949 was the $100 deposit paid by Wells, and in that transaction

such payment did not give rise to any gain because it was less than the expense of the sale. The expense of a sale enters into the computation of gain or loss. *Samuel C. Chapin*, 12 T. C. 235, 237, affd. 180 F. 2d 140. See also *Estate of Coid Hurlburt*, 25 T. C. 1286; *Estate of Clarence W. Ennis*, 23 T. C. 799; *Nina J. Ennis*, 17 T. C. 465. The respondent's determination is sustained. The gains from these two sales are taxable in 1950. Because of our holding under the first issue, the gains are taxable as ordinary income rather than as long-term capital gains.

Because the respondent now concedes that the total amount of the gain realized from the sales to Thoni and Wells is less than he determined, there must be a Rule 50 recomputation.

*Decision will be entered under Rule 50.*